IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
|   MELVIN FARLOW, | ) | |
| | ) | |
|     Petitioner, | ) | |
| | ) | |
|       v. | ) | No. 08-2001 |
| | ) | |
| TERRY MCCANN, Warden, | ) | |
|   Stateville Correctional Center, | ) | The Honorable |
| | ) | Michael P. McCuskey, |
|     Respondent. | ) | Judge Presiding. |

## <u>MOTION TO DISMISS</u>

Pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United

States District Courts, 28 U.S.C. § 2244(d)(1)(A), and this Court's order of February

22, 2008, respondent TERRY MCCANN, Warden of the Stateville Correctional Center,

moves this Court to dismiss the above-captioned Petition for Writ of Habeas Corpus,

and states as follows:

1.     Petitioner Melvin Farlow, identified as prisoner No. K92694, is

incarcerated at the Stateville Correctional Center in Joliet, Illinois, where he is in

the custody of respondent Terry McCann, the warden of that facility.

2.     In December 2000, following a jury trial in the Circuit Court of Macon

County, petitioner was convicted of criminal drug conspiracy with a prior conviction

for possession for sale of a controlled substance and was sentenced seventy-five

years' imprisonment.  Exhibit A (Rule 23 Order, *People v. Farlow*, No. 4-01-0427

(Ill.App. 2003)).  The state appellate court affirmed the judgment of conviction and sentence on July 15, 2003.  *Id.*  Petitioner did not file a petition for leave to appeal to the Illinois Supreme Court (PLA).  Pet. at 2.

3.      On June 1, 2004, petitioner filed a pro se postconviction petition pursuant to 725 ILCS 5/122-1, *et seq.*, in the Circuit Court of Macon County. Exhibit B (Postconviction petition, *People v. Farlow*, No. 99CF1532, Circuit Court of Macon County).  The trial court dismissed the postconviction petition, and the appellate court affirmed on October 13, 2006.  Exhibit C (Rule 23 Order, *People v. Farlow*, 4-04-0673 (Ill.App. 2006).  Petitioner filed a postconviction PLA that was denied on January 24, 2007.  Exhibit D (Order, *People v. Farlow*, No. 103716 (Ill. 2007)).

4.      The above-captioned petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254(d), was signed by petitioner on December 24, 2007, the earliest date on which petitioner could have mailed it from his correctional institution.[1]  Giving petitioner the benefit of the doubt, the petition was "filed" on that date.  *See, e.g., Jones v. Bertrand*, 171 F.3d 499, 501 (7th Cir. 1999).

5.      The instant petition raises the following claims:

    A.  trial counsel was constitutionally ineffective;

    B.  petitioner's sentence is an unconstitutional double enhancement because the trial court used an element inherent to the offense of a criminal drug conspiracy with a prior conviction — a prior conviction

---

[1]  Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts sets forth the "mailbox rule" applicable to pro se habeas filings.  Because petitioner does not state whether postage was prepaid, respondent cannot discern whether petitioner complied with Rule 3(d).

for a narcotics offense — as the basis for imposing an extended-term sentence;

C. the prosecutor made materially false statements to the jury that a State's witness would be prosecuted to the full extent of the law;

D. the trial court lacked personal jurisdiction over petitioner;

E. petitioner's trial was unfair because a juror concealed her personal relationship with the State's Attorney's office;

F. petitioner did not receive a full and fair postconviction hearing; and

G. petitioner did not receive fair notice that his supplemental postconviction petition was denied by the trial court.

Pet. at 5-6.

6.     On February 22, 2008, this Court ordered respondent to file a response to the above-captioned petition.  (Doc. 8).  That order, which is consistent with Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, contemplates that respondent may file a motion to dismiss.  *See* Advisory Committee Notes to Rule 5, 2004 Amendments.  Accordingly, respondent files this motion.

7.     The following materials are attached as exhibits to this motion:

Exhibit A:          Rule 23 Order, *People v. Farlow*, No. 4-01-0427 (Ill.App. 2003);

Exhibit B:          Postconviction petition, *People v. Farlow*, No. 99CF1532, Circuit Court of Macon County;

Exhibit C:          Rule 23 Order, *People v. Farlow*, 4-04-0673 (Ill.App. 2006); and

Exhibit D:          Order, *People v. Farlow*, No. 103716 (Ill. 2007).

### The Petition is Time-Barred

8.    Petitioner's § 2254 petition should be dismissed, with prejudice, as time-barred under 28 U.S.C. § 2244(d)(1).  Under this provision, the statute of limitations for habeas actions filed under § 2254 begins to run from the latest of the following: (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time to seek review (§ 2244(d)(1)(A)); (2) the date on which the impediment to filing an application is removed, if the impediment is created by state action in violation of the Constitution or laws of the United States and the defendant was prevented from filing by that state action (§ 2244(d)(1)(B)); (3) the date on which the Constitutional right asserted by the petitioner was acknowledged by the Supreme Court and made retroactive to cases on collateral review (§ 2244(d)(1)(C)); or (4) the date on which the factual predicate for the claim or claims could have been discovered through due diligence (§ 2244(d)(1)(A)).  *See* 28 U.S.C. § 2244(d)(1)(A)-(D).  Petitioner has not demonstrated that his time limit is governed by any of the events listed in § 2244(d)(1)(B)-(D), nor does an examination of his habeas petition itself reveal that it triggers those subsections.  Therefore, the start of petitioner's limitations period is governed by § 2244(d)(1)(A).

9.    Petitioner's conviction became final on August 5, 2003, 21 days after the state appellate court's decision on direct appeal, when the time expired to file a

PLA to the Illinois Supreme Court.[2]  *See Anderson v. Litscher*, 281 F.3d 672, 674

(7th Cir. 2002).  Petitioner properly filed a state postconviction petition on June 1,

2004 — 301 days after his conviction became final.  The time between June 1, 2004,

the date on which petitioner properly filed his postconviction petition, and January

24, 2007, the date on which the Illinois Supreme Court denied his postconviction

PLA, is tolled pursuant to 28 U.S.C. § 2244(d)(2).  *See Lawrence v. Florida*, 127 S.

Ct. 1079, 1083 (2007).  Another 334 days lapsed between January 24, 2007, the date

on which petitioner's state postconviction proceedings and the tolling period ended,

and December 24, 2007, the earliest date on which the instant habeas petition could

have been filed.  *See* Pet. at 7.  Adding the 301 days that ran on the limitations

period before petitioner filed his postconviction petition to the 334 days that ran on

the limitations period following the conclusion of petitioner's state postconviction

proceedings, the petition was filed 635 days after the limitations period began, and

is thus untimely by 270 days.  *See* 28 U.S.C. § 2244(d)(1) ("A 1-year period of

limitation shall apply to an application for a writ of habeas corpus by a person in

custody pursuant to the judgment of a State court.").

  10. Although the § 2244(d) limitations period may, in extraordinary

circumstances, be subject to equitable tolling, *Williams v. Sims*, 390 F.3d 958, 959

(7th Cir. 2004), petitioner has not alleged, nor could he demonstrate, that equitable

tolling is warranted.  Equitable tolling is available only if the plaintiff has been

---

[2]  At the time petitioner's direct appeal was pending, Illinois Supreme Court Rule 315(b) afforded litigants twenty-one days following entry of judgment to file a PLA, unless they filed an affidavit of intent, which would add fifteen days to the deadline. Effective January 1, 2005, that rule affords litigants thirty-five days to file a PLA.

pursuing his rights diligently and an external impediment has prevented a complaint from being timely filed. *See, e.g., Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way"); *accord, e.g., Williams*, 390 F.3d at 960 (doctrine of equitable tolling is applicable to "situations in which, without fault by the defendant, the plaintiff is *unable* to sue within the statutory period.") (emphasis added).

11.     Petitioner has not demonstrated that he has been pursuing his rights diligently; he offers no excuse for his delay in filing a postconviction petition after the conclusion of his direct appeal proceedings, nor does he explain why he waited almost a year to file his federal habeas petition after his postconviction proceedings were no longer pending in state court.  Furthermore, petitioner has not identified any "extraordinary circumstances" that prevented him from timely filing a habeas petition.  The facts stated in petitioner's habeas claims do not suggest that petitioner was not afforded the opportunity to file a federal habeas petition within the limitations period.

12.     Even with the benefit of the statutory tolling rules, petitioner's habeas petition was filed 270 days after the limitations period expired.  Petitioner is not entitled to equitable tolling because he has not diligently pursued his rights or than an extraordinary circumstance stood in the way of his filing a federal habeas petition.  Accordingly, this Court should dismiss the instant petition with prejudice.

## **Conclusion**

This Court should dismiss the instant petition with prejudice. If the Court determines that petitioner's habeas petition is not time-barred under AEDPA, respondent respectfully requests 30 days from the Court's order denying this motion to address the merits and/or the procedural defaults of petitioner's claims in a subsequent submission.

April 17, 2008                                 Respectfully submitted,

                                               LISA MADIGAN
                                               Attorney General of Illinois

                              By:    s/Eric W. Truett
                                     ERIC W. TRUETT, Bar # 6291213
                                     Assistant Attorney General
                                     100 W. Randolph Street, 12th Floor
                                     Chicago, Illinois 60601-3218
                                     PHONE: (312) 814-4684
                                     FAX: (312) 814-2253
                                     E-MAIL: etruett@atg.state.il.us

<u>CERTIFICATE OF SERVICE</u>

I hereby certify than on April 17, 2008, I electronically filed respondent's **MOTION TO DISMISS** with the Clerk of the United States District Court for the Central District of Illinois, Urbana Division, using the CM/ECF system; and I hereby certify that on the same date, I mailed by United States Postal Service the above-referenced motion to the following non-registered party:

Melvin Farlow, K92694
Route 53
P.O. Box 112
Joliet, Il 60434

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

By:     s/Eric W. Truett
ERIC W. TRUETT, Bar # 6291213
Assistant Attorney General
100 W. Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
PHONE: (312) 814-4684
FAX: (312) 814-2253
E-MAIL: etruett@atg.state.il.us

NO. 4-01-0427

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT



FILED
JUL 15 2003
CLERK OF THE
APPELLATE COURT, 4TH DIST.

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| MELVIN LEE FARLOW, | ) | No. 99CF1532 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott B. Diamond, |
| | ) | Judge Presiding. |

---

ORDER

In December 2000, a jury convicted defendant, Melvin Lee Farlow, of criminal drug conspiracy (720 ILCS 570/405.1 (West 1998)), and the trial court later sentenced him to 75 years in prison.

Defendant appeals, arguing that (1) his criminal drug conspiracy conviction is void because it violates Wharton's Rule; (2) his criminal drug conspiracy conviction is legally and factually inconsistent with the jury's inability to reach a verdict on charges of drug trafficking (720 ILCS 570/401.1 (West 1998)) and delivery (720 ILCS 570/401(a)(2)(C) (West 1998)); (3) the trial court improperly admitted other-crimes evidence; (4) the State failed to prove him guilty beyond a reasonable doubt of criminal drug conspiracy; (5) he was deprived of a fair trial when the prosecutor made improper remarks during closing argument; (6) the court abused its discretion by providing a non-pattern jury instruction; and (7) his sentence is excessive and constitutes cruel and unusual punishment. We affirm.

EXHIBIT A

# I. BACKGROUND

In November 1999, the State charged defendant in a five-count information with the following offenses:  (1) controlled substance trafficking with a prior conviction for possession for sale of a controlled substance (720 ILCS 570/401.1 (West 1998)) (count I); (2) delivery of a controlled substance with a prior conviction for possession for sale of a controlled substance (720 ILCS 570/401(a)(2)(C) (West 1998)) (count II); (3) possession of a controlled substance with intent to deliver with a prior conviction for possession for sale of a controlled substance (720 ILCS 570/401(a)(2)(C) (West 1998)) (count III); (4) criminal drug conspiracy with a prior conviction for possession for sale of a controlled substance (720 ILCS 570/405.1 (West 1998)) (count IV); and (5) possession of a controlled substance with a prior conviction for possession for sale of a controlled substance (720 ILCS 570/402(a)(2)(C) (West 1998)) (count V).

The evidence at defendant's December 2000 jury trial showed the following.

A. The April 8, 1999, Controlled Delivery

San Bernadino County, California, Sheriff's Department Officer Todd Patterson testified that on April 6, 1999, he was at a Mailbox, Etc., in San Bernadino.  Patterson's canine, Taz, alerted, indicating that one of the boxes contained narcotics. Patterson learned that the return address on the label was that of a vacant building and seized the box.  The box was addressed to a location in Decatur, Illinois.  When Patterson opened the

- 2 -

box, he saw that it contained a home stereo system. He opened the back of the stereo unit and found cocaine concealed inside in three separate plastic bags. The unit also contained fabric-softening sheets, which are used to attempt to defeat narcotics-sniffing dogs. He then repackaged the cocaine inside the stereo unit and returned it to its original box. He put that box into a larger box and sent it via United Parcel Service (UPS) to Chris Bolinger, a Springfield detective who, in April 1999, was assigned to a federal Drug Enforcement Agency (DEA) task force.

Bolinger testified that on April 7, 1999, he spoke by telephone with Patterson. They arranged for Patterson to ship to Bolinger a large box containing the box that Patterson had intercepted on April 6, 1999. On April 8, 1999, Bolinger retrieved the box from UPS. Inside the box, Bolinger found a smaller box with UPS markings on it that was addressed to Frannie Harris in Decatur, Illinois. Inside that box, Bollinger found a home stereo unit. Bolinger opened the back of the stereo unit and found a large plastic bag or bags containing a "white chunky powder material" later identified as cocaine. Bolinger noticed markings on the back of the stereo unit that he believed were Patterson's initials.

The cocaine was replaced in the stereo unit, and the stereo unit was put back in the box addressed to Harris. The box was wired with an alarm that would alert the Illinois State Police when the box was opened. The box was then resealed, and Bolinger arranged to make a controlled delivery to Harris's

- 3 -

address.

That same day, Bolinger dressed in a UPS uniform and took the box to Harris's address. He was met at the door by a woman who identified herself as Francine Harris. When he asked her to sign for the package, she signed the name Frannie Smith. As Bolinger drove away, he saw Harris take the box into the house.

While Bolinger and other agents were waiting to be alerted that the box had been opened, surveillance officers informed them that the box was being removed from the house. Bolinger's team then pulled up and stopped the car that was leaving Harris's driveway. They found the unopened box in the backseat of the car. George Allen and Mike Sutton were in the car, and Harris was outside the house.

Illinois State Police Trooper Trevor Stalets testified that on April 8, 1999, he met with Bolinger and another task force agent, Bruce Levy. Bolinger and Levy brought the box containing the stereo unit and cocaine to the task force office and opened it in Stalets's presence. He noticed initials on the back of the cover of the stereo. They replaced the cocaine in the stereo unit and put a transmitter in the box. Stalets then drafted a search warrant and went to the courthouse while other agents delivered the box.

Stalets was also one of the officers who executed the search warrant in Decatur. He saw the unopened box in the backseat of the car driven by Allen.

. Decatur police officer Richard McElroy testified that on April 8, 1999, he conducted surveillance of a house at "1350 North 19th" in Decatur. At about 2 p.m., he saw Bolinger deliver the box to Harris. At 2:19 p.m., a four-door Buick arrived at the house. Sutton was driving, and Allen was a passenger in the car. At 2:22 p.m., Harris, Allen, and Sutton left in the Buick and circled the area a couple of times. They arrived back at the house at 2:35 p.m., and Harris and Sutton went into the house. Sutton then came out of the house carrying the box, and Sutton and Harris got back into the car. As the car started down the driveway, all three were taken into police custody. The house was searched, and no contraband was found.

John Martin, an Illinois State Police Bureau of Forensic Sciences Laboratory employee, testified that he weighed the three bags of cocaine that had been removed from inside the stereo unit. The total weight of the cocaine was 740.8 grams.

Stalets further testified regarding methods of diluting cocaine and converting powder cocaine to crack cocaine. 740 grams of powder cocaine would convert to approximately 1,000 grams of crack cocaine. Crack cocaine is used in dosage units of 1/10 or 2/10 of a gram. Thus, 1,000 grams of crack cocaine contains between 5,000 and 10,000 dosage units. 740.8 grams of powder cocaine would amount to about 1,480 dosage units. The street value of cocaine in Decatur between April 6, 1999, and 9, 1999, was $100 per gram. If the cocaine was diluted, more dosage units would result and the value of the 740.8 grams would be

$92,600, with a street value of $100,000.  A user usually has two-tenths of a gram in his possession.  The amount of cocaine involved in this case was a distribution amount.

B. The April 13, 1999, Controlled Delivery

Bolinger testified that following the April 8, 1999, incident, Allen agreed to cooperate with law enforcement authorities.  On April 10, 12, and 13, 1999, Allen telephoned Bolinger at the DEA office in Springfield, and Bolinger, in turn, placed a "three-way" telephone call to the person in California who had sent the package.  The number Bolinger called was 909-429-2058, and Allen referred to the person he spoke with as "Jack."

The conversations between Allen and Jack were recorded and transcribed.  Tapes of some of those conversations were played for the jury.  Although their conversations were somewhat cryptic, Jack wanted something shipped to him in two installments, and he told Allen that the box should be addressed to Ike Green at "1979 North."  A recording of an April 11, 1999, conversation was played for the jury.  In one conversation, Jack referred to "old girl" and was concerned about old girl being sent to him.  Stalets testified that in his experience as a narcotics investigator, he had heard the term "old girl" used to refer to either drugs or money.  Stalets opined that defendant was the person identified as Jack on the recorded telephone conversations.

On April 12, 1999, Bolinger packed the box containing the stereo unit into a larger box and shipped it back to

- 6 -

Patterson in California.

During a phone conversation on April 13, 1999, Jack expressed concern about whether the package would arrive before 2 or 3 p.m. that day because he could not be present to receive it after that time.  At approximately 4:37 p.m. on April 13, 1999, Bolinger and Allen called Jack's number again, but this time they were told that Jack was not there.  Bolinger immediately called the number again and this time spoke to Patterson.

Patterson testified that on April 13, 1999, he received the stereo unit, which no longer contained the cocaine, from Illinois.  Officers put a false package of money in the back of the stereo unit and covered the money package with a fluorescent powder that is invisible to the naked eye but shows up under a "black light."  Officers then brought the package to UPS to have it delivered to the addressee, Ike Green, at 1979 North Joyce in Rialto, California.

Richard Swigart, a detective with the San Bernadino County Sheriff's Department, testified that on April 13, 1999, the sheriff's department was conducting surveillance at 1979 North Joyce Avenue in Rialto, California.  Around 2 p.m., a UPS truck arrived at the North Joyce residence, and the driver delivered a box and left.  About five minutes later, Marlon Farlow (defendant's brother) came out of the residence and got into a Jeep Cherokee, which was parked in the driveway, and drove off.  Before Marlon turned off of the street, police officers pulled him over.  The officers then returned to the 1979 North

- 7 -

Joyce residence to execute a search warrant.

About three minutes after the officers began knocking on the front door of the North Joyce residence, defendant came to the door and let the officers into the house through the garage. Defendant told Swigart that he lived at the residence. During the search, Swigart found a phone bill in the name of Gavita Durham. Defendant explained that Durham lived there a long time ago, and he paid the bill without changing the name on the account. Swigart also found defendant's name on a registration document for a Cadillac located in the garage. It showed an address of 2084 North Palm Avenue in Rialto. Officers also found the box and the speakers for the stereo unit in the living room and the stereo unit itself in a "covered patio" area.

Officers also searched Marlon's Jeep, where they found two small, black leather bags. One of the bags contained cocaine and marijuana, and the other contained digital scales. Officers also seized two cellular phones from the Cadillac.

Patterson, who was present during the search at 1979 North Joyce, took defendant into a bedroom and, using a black light, illuminated defendant's hands. Defendant's hands and arms glowed very brightly with flourescent powder.

Also on April 13, 1999, Patterson interviewed defendant, who told Patterson that the scales, cocaine, and marijuana found in Marlon's Jeep belonged to defendant. He also told Patterson that he did not send cocaine to Illinois; he was only "the middle man, the money man," and the cocaine was actually

sent by some Mexicans from Marino Valley.  Defendant explained
that he received the money, contacted the Mexicans, met with
them, gave them the money, and received his share.  When
Patterson asked defendant how he got involved in this, defendant
said he "just put some people together that he had known from way
back."  Defendant said that the package that arrived on April 13,
1999, was supposed to contain $14,000, and he was supposed to
contact the Marino Valley people to give them the money.

        Kalpesh Mistry, a San Bernadino County Sheriff's
Department crime laboratory employee, testified that on May 3,
1999, he analyzed and weighed the three packages of cocaine that
had been found in Marlon's Jeep.  Two packages contained cocaine
in "salt" form and weighed 27.50 grams and 22.16 grams, respec-
tively, and the third package contained cocaine in base form and
weighed 12.43 grams.

        Defendant testified that on the afternoon of April 13,
1999, he was at 1979 North Joyce.  He denied having had a conver-
sation with Patterson and denied (1) telling Patterson that he
was dealing with Mexicans from Marino Valley as a money man, and
(2) saying anything to Patterson about drugs.  He stated that he
did not know if a package was delivered to 1979 North Joyce
before the police arrived.  He did not see a shipping box or a
stereo unit until after police arrived.  He acknowledged that the
Cadillac and the vehicle registration document were his, but he
maintained that the Cadillac was not in the garage when the
police arrived.  He identified the Jeep Cherokee as belonging to

- 9 -

Marlon.

On this evidence, the jury returned a guilty verdict on count IV, criminal drug conspiracy with a prior conviction for possession for sale of a controlled substance (720 ILCS 570/405.1 (West 1998)).  The jury was deadlocked on counts I and II, and the trial court declared a mistrial as to those counts.  Following an April 2001 sentencing hearing, the court sentenced defendant as stated.

This appeal followed.

## II. ANALYSIS

### A. Wharton's Rule

Defendant first argues that his criminal drug conspiracy conviction is void because it violates Wharton's Rule.  We disagree.

As generally stated, Wharton's Rule "prohibits prosecution of a conspiracy to commit a particular crime when the commission of that crime requires the participation of more than one person."  People v. Laws, 155 Ill. 2d 208, 211, 613 N.E.2d 747, 749 (1993).  However, Wharton's Rule does not bar prosecution for conspiracy simply because the substantive crime involves the participation of two or more actors; it only bars such prosecution "when the cooperative conduct inherent in the substantive crime is indistinguishable from the element of agreement in the alleged conspiracy."  Laws, 155 Ill. 2d at 213, 613 N.E.2d at 749.  Wharton's Rule is not based on constitutional principles (Iannelli v. United States, 420 U.S. 770, 773-74, 43 L. Ed. 2d

- 10 -

616, 620-21, 95 S. Ct. 1284, 1288 (1975)) and is not an actual "rule"; rather, it is merely a judicial presumption to be applied in the absence of legislative intent to the contrary.  <u>Laws</u>, 155 Ill. 2d at 213, 613 N.E.2d at 749; <u>People v. Cooper</u>, 239 Ill. App. 3d 336, 354, 606 N.E.2d 705, 719 (1992).

Some districts of the Illinois appellate court have held that Wharton's Rule has been abrogated in Illinois.  See <u>People v. Melgoza</u>, 231 Ill. App. 3d 510, 534, 595 N.E.2d 1261, 1279 (1992) (in which the First District held that Wharton's Rule did not apply when the defendant was charged with conspiracy under the Illinois Criminal Code of 1961 (Code), which was "clearly an expression of legislative intent which defeats the presumption of Wharton's Rule"); <u>Cooper</u>, 239 Ill. App. 3d at 352-355, 606 N.E.2d at 718-19 (in which the Fifth District held that Wharton's Rule did not bar the defendant's prosecution for conspiracy to commit cannabis trafficking for the following two reasons:  (1) Wharton's Rule does not apply when the underlying offense of the conspiracy charge does not necessarily require the concerted action or agreement of two or more persons but may be committed by a single individual acting alone; and (2) Wharton's Rule has been abolished in Illinois); <u>People v. Caballero</u>, 237 Ill. App. 3d 797, 806-808, 604 N.E.2d 1028, 1035-37 (1992) (in which the Third District held that the defendant's conspiracy conviction was not barred by Wharton's Rule, citing legislative intent).

Appellate court districts holding that Wharton's Rule

has been abrogated in Illinois often cite the Committee Comment
to section 8-2 of the Code, which provides, in pertinent part, as
follows:

> "One other important change should be
> noted:  Since, under 8-2(a), conspiracy is
> committed when (with the required intent)
> there is an agreement to commit _any_ offense,
> this eliminates in Illinois the application
> of the so-called 'Wharton Rule' in conspir-
> acy, which says that if the object of the
> agreement is a crime which (by its very na-
> ture) requires two or more persons to commit
> it, then the agreement does not amount to
> conspiracy because no greater danger is pre-
> sented by the plurality of actors in the
> conspiracy than would be presented to the
> community in the commission of the principal
> offense.  (E.g., gambling at cards, dueling,
> bigamy, etc.) (See _People v. Purcell_, 304
> Ill. App. 215, 26 N.E.2d 153 (1940).)  The
> Committee felt that the Wharton Rule fails to
> take into account the preventive aspect of
> prosecuting conspiracies, that is, to dis-
> courage the more dangerous criminal activity
> of several persons by punishing the prelimi-
> nary agreement to engage in such activity.

- 12 -

> That the criminal activity is of such nature
> as to inevitably require more than one person
> in its accomplishment seems the more reason
> to punish the preliminary agreement to under-
> take it.  Section 8-2 is intended to abrogate
> the Wharton Rule in Illinois, and the holding
> in [Purcell]."  (Emphasis in original.)  720
> ILCS Ann. 5/8-2, Committee Comments--1961, at
> 593 (Smith-Hurd 2002).

See Caballero, 237 Ill. App. 3d at 807, 604 N.E.2d at 1035-36;
People v. Roberts, 83 Ill. App. 3d 311, 318-19, 404 N.E.2d 278,
284 (1980).

In Laws, the supreme court noted that some Illinois
appellate court districts had deemed Wharton's Rule abrogated.
However, the Laws court declined to address that issue because
the parameters of Wharton's Rule did not preclude the conviction
in the case before it.  Laws, 155 Ill. 2d at 212, 613 N.E.2d at
749.

In this case, we agree with the State that Wharton's
Rule does not bar defendant's conviction for criminal drug
conspiracy (720 ILCS 570/405.1 (West 1998)).  First, defendant's
conviction falls under the exception to Wharton's Rule for
underlying criminal acts that may be committed by an individual
acting alone.  Defendant was convicted of criminal drug conspir-
acy in that he conspired with Allen to commit a violation of
section 401(a)(2)(C) of the Illinois Controlled Substances Act

- 13 -

(Act) (720 ILCS 570/401(a)(2)(C) (West 1998))--namely, possession with intent to deliver.  The crime of possession with intent to deliver does not "necessarily require the concerted action or agreement of two or more persons but may be committed by a single individual acting alone."  Cooper, 239 Ill. App. 3d at 352, 606 N.E.2d at 718.

Moreover, even if Wharton's Rule has not been wholly abrogated in Illinois, it is abrogated by section 405.1 of the Act, which provides that a person be convicted of criminal drug conspiracy when he or she conspires with either one or more others to violate section 401, 402, or 407 of the Act.  720 ILCS 570/405.1(a) (West 1998).  Thus, in drafting section 405.1, the legislature clearly intended to defeat the presumption of Wharton's Rule.

### B. Conflicting Verdicts

Defendant next argues that his conviction for criminal drug conspiracy is legally and factually inconsistent with the jury's inability to reach a verdict on the charges of drug trafficking (720 ILCS 570/401.1 (West 1998)) and delivery (720 ILCS 570/401(a)(2)(C) (West 1998)).  We disagree.

In this case, the jury did not acquit defendant of any charges; rather, it failed to reach a verdict on two counts.  A hung jury is a jury unable to unanimously agree on any verdict. People v. Hudson, 171 Ill. App. 3d 1029, 1041, 526 N.E.2d 164, 171 (1987).  A jury's failure to reach a verdict is too inconclusive to qualify as legally inconsistent.  See People v. Daniels,

- 14 -

187 Ill. 2d 301, 310, 718 N.E.2d 149, 156 (1999) (double jeopardy does not attach when a deadlocked jury prompts the trial court to declare a mistrial); <u>United States v. Bailin</u>, 977 F.2d 270, 280-81 (1992) (holding that a jury's failure to reach a verdict is too inconclusive to qualify as inconsistent for purposes of issue preclusion).

Moreover, "[t]he criminal drug conspiracy statute does not require the completion of a predicate offense." <u>People v. Edwards</u>, 337 Ill. App. 3d 912, 926-27, 788 N.E.2d 35, 47 (2002). To convict defendant of criminal drug conspiracy, all the jury had to find was that defendant and Allen conspired to commit the offense of possession with intent to deliver and that at least one of them took an action in furtherance of committing that offense. 720 ILCS 570/405.1 (West 1998). Thus, even if the jury had acquitted defendant on the charges of trafficking and delivery, a guilty verdict on criminal drug conspiracy would not be legally inconsistent.

Last, we note that the Supreme Court of Illinois has recently abandoned its previous holdings regarding legally inconsistent verdicts. In <u>People v. Jones</u>, No. 93511, slip op. at 8 (May 22, 2003), ___ Ill. 2d ___, ___, ___ N.E.2d ___, ___, the court wrote that "defendants in Illinois can no longer challenge convictions on the sole basis that they are legally inconsistent with acquittals on other charges."

C. Other-Crimes Evidence

Defendant next argues that he was deprived of a fair

- 15 -

trial when the trial court admitted evidence that cocaine, cannabis, and scales were found in Marlon's Jeep.  We disagree.

Evidence that a defendant committed other crimes is generally admissible when it is relevant to prove a material question other than the defendant's propensity to commit the crime charged, such as modus operandi, intent, identity, motive, or absence of mistake.  Determinations of evidentiary value lie within the trial court's sound discretion, and we will not reverse that court's ruling on the admissibility of other-crimes evidence absent a clear abuse of discretion.  People v. Wassell, 321 Ill. App. 3d 1013, 1017, 748 N.E.2d 1269, 1271 (2001).

In this case, after hearing arguments of counsel outside the jury's presence, the trial court determined that the evidence was relevant to show defendant's intent to deliver and was admissible under the res gestae exception.

We agree with the State that the evidence that defendant possessed cocaine, cannabis, and digital scales was relevant to prove material matters other than defendant's propensity to commit crime.  For example, the evidence (1) showed that defendant had the intent to deliver controlled substances; (2) refuted defendant's statement to Patterson that he was merely a "middle man" and was not involved in cocaine; and (3) refuted any innocent explanation for the cryptic communications between defendant and Allen over the telephone.  We therefore conclude that the trial court did not abuse its discretion by admitting this evidence, even though one of its stated reasons for doing so was

- 16 -

clearly erroneous.  See <u>People v. Hill</u>, 278 Ill. App. 3d 871, 874, 663 N.E.2d 503, 506 (1996); <u>People v. Dennis</u>, 181 Ill. 2d 87, 97, 692 N.E.2d 325, 331 (1998) ("Illinois has abandoned the concept of <u>res gestae</u> as amorphous, having been applied indis-criminately and inhibiting any reasonable analysis").

### D. Sufficiency of the Evidence

Defendant next argues that the State failed to prove him guilty beyond a reasonable doubt of criminal drug conspiracy. Specifically, he contends that the State presented insufficient evidence corroborating his confession.  We disagree.

In <u>People v. Ortiz</u>, 196 Ill. 2d 236, 259, 752 N.E.2d 410, 425 (2001), the Supreme Court of Illinois set forth the standard for reviewing a claim of insufficient evidence as follows:

> "[T]he question is whether any rational trier of fact could have found the essential ele-ments of the crime beyond a reasonable doubt, viewing the evidence in the light most favor-able to the State.  [Citation.]  It is the trier of fact's responsibility to determine the witnesses' credibility and the weight given to their testimony, to resolve con-flicts in the evidence, and to draw reason-able inferences from the evidence; we will not substitute our judgment for that of the trier of fact on these matters.  [Citation.]

However, although determinations by the trier
of fact are entitled to great deference, they
are not conclusive.  Rather, we will reverse
a conviction where the evidence is so unrea-
sonable, improbable, or unsatisfactory as to
justify a reasonable doubt of defendant's
guilt."

Apart from defendant's confession that he was a "money
man" in drug transactions between others, the following evidence
was presented:  (1) police delivered a box containing a home
stereo and packages of cocaine to Allen in Decatur; (2) Allen
agreed to work with the police; (3) Allen made a series of phone
calls to telephone number 909-429-2058 and spoke with a person
named Jack; (4) during those phone calls, Allen and Jack crypti-
cally discussed the stereo unit, the price for the cocaine, and
other drug transactions; (5) Jack instructed Allen to "do" "1979
North" "under" "Ike Green"; (6) Stalets identified Jack's voice
as being defendant's; (7) the jury heard audiotape of the tele-
phone calls and defendant's in-court testimony; (8) the box
containing the stereo unit and a false money package marked with
flourescent powder was delivered to 1979 North Joyce; (9) after
the delivery, defendant was arrested at that address and had
flourescent powder on his hands and forearms; and (10) when
Bolinger dialed 909-429-2058 on April 13, 1999, he spoke with
Patterson, who was at 1979 North Joyce.

This evidence overwhelmingly shows that defendant

- 18 -

conspired with Allen to commit a violation of section
401(a)(2)(C) of the Act (720 ILCS 570/401(a)(2)(C) (West 1998)).

### E. Closing Argument

Defendant next argues that he was deprived of a fair
trial when the prosecutor made improper remarks during closing
argument. The State responds that defendant has forfeited his
right to raise this issue on appeal. We agree with the State.

To preserve an issue for appellate review, a defendant
must object to the purported error at trial and include it in his
written posttrial motion. People v. Ballard, No. 88885, slip op.
at 30-31 (August 29, 2002), ___ Ill. 2d ___, ___, ___ N.E.2d ___,
___. The record shows that defendant did not object to the
prosecutor's closing argument in his posttrial motion, and we
thus conclude that he has forfeited the right to raise the issue
on appeal.

Moreover, were we to review defendant's argument, we
would reject it. Prosecutors are afforded wide latitude in
making closing arguments. People v. Williams, 192 Ill. 2d 548,
573, 736 N.E.2d 1001, 1015 (2000). The prosecutor may denounce
the accused, reflect on the credibility of witnesses, and urge
the fearless administration of justice if those arguments are
based on facts and reasonable inferences drawn from the evidence.
People v. Bennett, 304 Ill. App. 3d 69, 72, 710 N.E.2d 445, 447
(1999). In reviewing a challenge to remarks made by the prosecu-
tor during closing argument, the comments must be considered in
the context of the parties' closing arguments as a whole. People

v. Simms, 192 Ill. 2d 348, 397, 736 N.E.2d 1092, 1125 (2000).

Defendant complains of the following remarks made by the prosecutor in rebuttal:

"[PROSECUTOR]:  [Defense counsel] stated--he states that [defendant] got up and testified and denied making that confession. That is what he testified.  That is what the defendant testified.  What do you expect him to do when he is on trial?  Does he have a motive or interest in this case?  You are darn right he does.  Is he going to get up and testify, yes, I confessed to the crime? So the argument has to be that the police officer made up a confession he [sic].  He wants you to take the word of a drug dealer over a police officer

We have two officers.  Detective Patterson has over 20 years experience.  You think police officers are going to make up a conspiracy over this guy?  Are they going to risk their pension, livelihood--

[DEFENSE COUNSEL]:  Objection, that is improper argument.

THE COURT:  Overruled[;] the answer can stand.

[PROSECUTOR]:  Their good names, all the years they put into prosecuting cases over

this defendant?  And you will have to ask if they are going to make up a confession. Wouldn't Deputy Swigart have joined in and said, not only did he tell me he was taking phone bills from there, and that he destroyed package labels, he was present when he confessed to Patterson.  If you are going to be make up a confession, wouldn't they make it up really good?  Wouldn't they say yes, I am not only the money man, I took drugs to UPS, I sent drugs too [sic] George Allen out there, all this stuff.  If you are going to make up confession, you make up something really good."

In light of the fact that defendant testified and denied making certain statements to Patterson, the prosecutor's arguments were not improper.  See People v. Killen, 217 Ill. App. 3d 473, 481, 577 N.E.2d 560, 565 (1991) ("Such an argument is proper when, as here, it can be characterized as comment on, or discussion of, the credibility of the defendant and other witnesses, and when it is based on the evidence and reasonable inferences drawn therefrom").

### F. Jury Instructions

Defendant next argues that the trial court erred by allowing the following nonpattern instruction to go to the jury: "It is not a defense to the offense of [c]riminal [d]rug

[c]onspiracy that the person or persons with whom the defendant
is alleged to have conspired have not been convicted or are not
amenable to justice." See 720 ILCS 570/405.1(b) (West 1998).
Specifically, he contends that this instruction should not have
been given because it "did not address any issues raised by the
evidence and therefore hopelessly confused the jury resulting in
[defendant's] conviction for conspiracy." The State responds
that defendant forfeited the right to raise this issue because he
did not raise it in his posttrial motion. We agree with the
State.

As previously stated, to properly preserve an issue for
review, a defendant must both object to the purported error at
trial and include it in his written posttrial motion. Ballard,
No. 88885, slip op. at 30-31, ___ Ill. 2d at ___, ___ N.E.2d at
___. The record shows that defendant did not raise this issue in
his posttrial motion. We thus conclude that defendant has
forfeited the right to raise this issue on appeal.

Moreover, were we to consider defendant's argument on
the merits, we would reject it.

"A defendant is entitled, as is the
State, to the submission of appropriate jury
instructions on the law that applies to his
theory of the case if there is evidence in
the record to support that theory. However,
it is for the trial court to determine, after
considering the facts and the governing law,

- 22 -

whether the jury should be instructed on a
particular subject.   ***

The decision whether to give a [non-
pattern] instruction rests within the sound
discretion of the trial court." <u>Simms</u>, 192
Ill. 2d at 412, 736 N.E.2d at 1133.

As the State points out, defendant had questioned the
State's witnesses on whether Allen or other members of the
conspiracy had been charged or convicted.   Therefore, the trial
court did not abuse its discretion by providing an instruction
that properly stated the law on that point.   Defendant's claim
that the instruction "hopelessly confused" the jury is mere
speculation and not supported by the record.

### G. Defendant's Sentence

Last, defendant argues that his 75-year sentence (1) is
excessive, and (2) constitutes cruel and unusual punishment in
violation of his rights under the eighth amendment to the United
States Constitution (U.S. Const., amend. VIII).   We disagree.

This court affords great deference to the sentence
imposed by the trial court, as that court is in the best position
to make a reasoned decision as to the appropriate punishment in a
given case.   Thus, in considering the propriety of a sentence,
this court will not disturb the trial court's judgment absent an
abuse of discretion.   <u>People v. Anderson</u>, 325 Ill. App. 3d 624,
637, 759 N.E.2d 83, 94 (2001).   "A sentence within statutory
limits will not be deemed excessive unless it is greatly at

- 23 -

variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." <u>People v. Fern</u>, 189 Ill. 2d 48, 54, 723 N.E.2d 207, 210 (1999).

Under section 401(a)(2)(C) of the Act (720 ILCS 570/401(a)(2)(C) (West 1998)), defendant was eligible for a sentence of 12 to 50 years in prison. However, defendant's prior conviction rendered him eligible for a maximum sentence of 100 years. 720 ILCS 570/408 (West 1998).

At the close of defendant's April 2001 sentencing hearing, the trial court announced defendant's 75-year sentence and made the following observations from the bench: (1) defendant's conviction involved 740 grams of cocaine; (2) defendant was in California, but the effect of his crime would be felt "on the streets of Decatur"; (3) drug offenses are not nonviolent crimes, the violence is "just a little harder to see"; and (4) defendant's sentence needed to send a message.

Section 411 of the Act sets forth eight factors that "the sentencing court may consider *** as indicative of the type of offenses which the legislature deems most damaging to the peace and welfare of the citizens of Illinois and which warrants the most severe penalties." 720 ILCS 570/411 (West 1998). The following three factors are pertinent in this case:

> "(1) the unlawful delivery of the most
> highly toxic controlled substances, as re-
> flected by their inclusion in Schedule I or
> II of this Act;

- 24 -

(2) offenses involving unusually large
quantities of controlled substances, as mea-
sured by their wholesale value at the time of
the offense;

(3) the unlawful delivery of controlled
substance by a non[]user to a user of con-
trolled substances." 720 ILCS 570/411 (West
1998).

The evidence in this case showed the following:  (1)
cocaine is a schedule II substance (720 ILCS 570/206(b)(4) (West
1998)); (2) 740 grams is a large quantity of cocaine with a
street value of at least $74,000; and (3) the presentence inves-
tigation report showed that defendant was a nonuser.  In light of
the nature of defendant's crime and defendant's prior record, we
conclude that the trial court did not abuse its discretion by
sentencing defendant to 75 years in prison.

We also reject defendant's claim that his sentence
violates the eighth amendment protection against cruel and
unusual punishment.  "'[T]he eighth amendment does not require
strict proportionality between crime and sentence.  Rather, it
forbids only extreme sentences that are "grossly disproportion-
ate" to the crime.'"  People v. Harlow, 246 Ill. App. 3d 196,
198, 615 N.E.2d 354, 355 (1993), quoting Harmelin v. Michigan,
501 U.S. 957, 1001, 115 L. Ed. 2d 836, 869, 111 S. Ct. 2680, 2705
(1991) (Kennedy, J., concurring).  "The gross disproportionality
principle reserves a constitutional violation for only the

- 25 -

extraordinary case." <u>Lockyer v. Andrade</u>, ___ U.S. ___, ___, 155 L. Ed. 2d 144, 159, 123 S. Ct. 1166, 1175 (2003).

Defendant's sentence does not represent such an extraordinary case.  See <u>Harmelin</u>, 501 U.S. 957, 115 L. Ed. 2d 836, 111 S. Ct. 2680 (holding that a sentence of life in prison without possibility of parole--for a first-time offender convicted of possessing 672 grams of cocaine--was not "grossly disproportionate" in violation of the eighth amendment); <u>Ewing v. California</u>, ___ U.S. ___, ___, 155 L. Ed. 2d 108, 123, 123 S. Ct. 1179, 1190 (2003).  (Upholding sentence of 25 years to life for theft of three golf clubs under California's "three strikes law"); <u>Lockyer</u>, ___ U.S. at ___, 155 L. Ed. 2d at 159, 123 S. Ct. at 1175 (upholding sentence of two consecutive terms of 25 years to life in prison for stealing $150 in videotapes).

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN, J., with KNECHT and COOK, JJ., concurring.

THE PEOPLE OF THE STATE OF ILLINOIS

VS.

MELVIN FARLOW

1999-CF-1532

EXHIBIT B

TABLE OF CONTENTS

C 1-27                PETITION FOR POST CONVICTION RELIEF

C 28-32               JUDGMENT

IN THE

CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT

MACON COUNTY, ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | Petition for Post Conviction Relief. |
| Respondent, ) | |
| ) | Case No. 99 CF 1532   **FILED** |
| -Vs- ) | **JUN 0 9 2008** |
| ) | The Honorable |
| MELVIN FARLOW, ) | Scott B. Diamond   Kathy A. Hott |
| ) | Judge presiding.   Circuit Clerk |
| Petitioner. ) | |
| ) | |

## NOTICE OF FILING

To: State's Attorney Office
    Macon County Courts Facility
    Decatur, Illinois 62523

Please TAKE NOTICE that on June 1, 2004 I have filed with the Clerk of the Circuit Court of the Sixth Judicial Circuit of Macon County, 235 E. Wood Street Decatur, Illinois Petitioner's Petition for Post Conviction Relief, a copy of which is hereby served upon you.

By: *Melvin Farlow*

Melvin Lee Farlow
Reg. No. K92694
P.O. Box 112
Joliet, IL. 60434

The undersigned certifies that a copy of the foregoing was served upon the above named parties. The sam being sent via institutional mail with proper postage having been paid at the Stateville Correctional Center on June 1, 2004.

By: *Melvin Farlow*

SUBSCRIBED and SWORN to before me
This 1st day of June, 2004.

*Phyllis Baker*

NOTARY PUBLIC

```
"OFFICIAL SEAL"
Phyllis Baker
Notary Public, State of Illinois
My Commission Exp. 01/21/2007
```

C1                                    *Exhibit I*

STATE OF ILLINOIS )
                )SS
COUNTY OF MACON )

IN THE
CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
MACON COUNTY, ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Petition for Post Conviction Relief. |
| Respondent, | ) | |
| | ) | Case No. 99 CF 1532 |
| -Vs- | ) | |
| | ) | The Honorable |
| MELVIN FARLOW, | ) | Scott B. Diamond |
| | ) | Judge Presiding |
| Petitioner. | ) | |
| | ) | |

## PETITION FOR POST CONVICTION RELIEF

Now comes the petitioner, Melvin Farlow, in the foregoing cause of action pursuant to the Post Conviction Hearing Act, 725 ILCS 5/122-1, and moves this Honorable Court to vacate his unconstitutional conviction and sentence obtained in the Circuit Court of the Sixth Judicial Circuit of Macon County, Illinois. In support thereof, Petitioner states as follows:

1. Petitioner was convicted of one count of unlawful criminal drug conspiracy with a prior possession for sale conviction pursuant to 720 ILCS 570/405.1 in December of 2000, before the Honorable Scott B. Diamond and there after sentenced to an extended term sentence of seventy-five (75) years in the Illinois Department of Corrections under Indictment number 99 CF 1532.

2. Petitioner is presently incarcerated at Stateville Correctional Center, Joliet, Illinois under commitment number K-92694.

C2 [(1)]

3. Petitioner appealed his conviction to the Appellate Court of Illinois and that court affirmed his conviction on July 15, 2003 appellate number 4-01-0427.

4. Petitioner appealed to the Supreme Court of Illinois for leave to appeal and was denied on December __3__, 2003. Supreme Court number __96830__.

5. This petition was mailed to the clerk of the Circuit Court within the time frame enumerated under 725 ILCS 5/122-1.

## CONSTITUTIONAL VIOLATIONS

ISSUE ONE:     PETITIONER WAS DENIED HIS FEDERALLY PROTECTED RIGHTS WHERE HE IS BEING HELD UNLAWFULLY IN STATE CUSTODY IN VIOLATION OF LAW, TREATIES AND THE CON-STITUTION OF THE UNITED STATES WHERE HIS DETENTION VIOLATES FUNDAMENTAL LIBERTIES SAFEGUARDED AGAINST STATE ACTION BY THE FEDERAL CONSTITUTION, AMEND-MENTS V,VI, AND XIV, WHERE EVIDENCE WAS LOST IN BAD FAITH AFTER DEFENSE COUNSEL'S REQUESTED SAID EVIDENCE AND TRIAL COUNSEL FAILED TO INCLUDE ISSUE IN A TIMELY FILED POST TRIAL MOTION.

Petitioner was denied his federally protected rights where he is being held unlawfully in state custody in violation of law, treaties and the constitution of the United States where his detention violates fundamental liberties safeguarded against state action by the Federal constitution, Amendments 5,6, and 14, where evidence at trial was lost in bad faith after defense counsel requested said evidence. Arizona v. Youngblood, (1988( 109 S.Ct. 333. Under Youngblood, the failure to preserve useful evidence constitutes a denial of due process when a defendant can show bad faith on the part of the police. Bad faith is shown by defense counsel's requesting said evidence and the state then reveals that such evidence is lost. This claim is based on the (see Brady v. Maryland)

C3 (2)

trial records, no further proof has been provided. Petitioner

would have provided a copy of the record, but petitoner's tran-

scripts and other legal material was lost by Stateville Correctional

Center. (See attached grievance form) U.S. v. Ross, 953 F.2d 321.

ISSUE TWO:    PETITIONER WAS DENIED HIS FEDERALLY PROTECTED
              RIGHTS WHERE HE IS BEING HELD UNLAWFULLY IN STATE
              CUSTODY IN VIOLATION OF LAW, TREATIES AND THE CON-
              STITUTION OF THE UNITED STATES WHERE HIS DETENTION
              VIOLATES FUNDAMENTAL LIBERTIES SAFEGUARDED AGAINST
              STATE ACTION BY THE FEDERAL CONSTITUTION, AMENDMENTS
              V,VI AND XIV, WHERE TRIAL COUNSEL PROVIDED IN-
              EFFECTIVE ASSISTANCE WHEN HE FELL TO INCLUDE IN A
              TIMELY FILED POST TRIAL MOTION THAT IMPROPER PRO-
              SECUTORIAL COMMENTS DURING CLOSING ARGUMENTS DENIED
              THE DEFENDANT A FAIR TRIAL.

Petitioner was denied his federally protected rights where

he is being held unlawfully in state custody in violation of law,

treaties and the constitution of the United States where his

detention violates fundamental liberties safeguarded against

state action by the federal constitution, Amendments 5,6, and 14,

where trial counsel provided ineffective assistance of counsel

when counsel fell to include in a timely filed post trial motion

that the prosecution used improper closing argument denying

petitioner a fair trial and exposed petitioner to waiver.

The prosecutor argued that the defendant denied making the

confession and that he wants you (jury) to take the word of a

drug dealer over a police officer and commented as to whether the

police officers were going to risk their pensions and livelihood

which was objected to by the defendant. (Vol. VII; Tr. p. 74-77)

A prosecutor cannot comment on the truth or falsity of a witness's

testimony because it invades the province of the jury and intro-

duces a prosecutor as the thirteenth juror. People v. Williams,

C4 (3)

192 Ill.2d 548, 573, 736 N.E.2d 1001, 1015 (2000). The prosecution's

comments on the truethfulness of police statements and defendant's

was improper and prejudiced the defendant affecting substantial

rights of the defendant where the trial court did not efficantly

provide cautionary instructions and the strength of the state's

case was based on circumstantial evidence. The Prosecution's

improper arguments infected the trial with actions so fundamentally

unfair as to make the resulting conviction a denial of due process.

Darden v. Wainwright, 477 U.S. 168, 91 L.Ed.2d 14, 106 S.Ct. 2464

(1986).

No further proof has been provided. Petitioner would have

provided a copy of the record, but petitioner's transcripts and

other legal material was lost by Stateville Correctional Center,

However this claim is based on the record. (See attached grievance

form)

ISSUE THREE:    PETITIONER WAS DENIED HIS FEDERALL PROTECTED RIGHTS
                WHERE HE IS BEING HELD UNLAWFULLY IN STATE CUSTODY
                IN VIOLATION OF LAW, TREATIES AND THE CONSTITUTION
                OF THE UNITED STATES WHERE HIS DETENTION VIOLATES
                FUNDAMENTAL LIBERTIES SAFEGUARDED AGAINST STATE
                ACTION BY THE FEDERAL CONSTITUTION, AMENDMENTS
                V,VI, AND XIV, WHERE TRIAL COUNSEL PROVIDED IN-
                EFFECTIVE ASSISTANCE WHEN COUNSEL FAILED TO INCLUDE
                IN A TIMELY FILED POST TRIAL MOTION THAT TRIAL
                COURT FAILED TO INSTRUCT THE JURY ON ALL ESSENTIAL
                ELEMENTS OF THE CHARGED OFFENSE.


Petitioner was denied his federally protected rights where

he is being held unlawfully in state custody in violation of law,

treaties and the constitution of the United States where his

detention violates fundamental liberties safeguarded against

state action by the federal constitution, Amendments 5,6, and 14

where trial counsel provided ineffective assistance when counsel

failed to include in a timely filed post trial motion that trial

court failed to instruct the jury on all essential elements of

the charged crime. <u>U.S. v. Gaudin</u>, 515 U.S. 506, 132 L.Ed.2d 444,

115 S.Ct. 2310 (1995); <u>People v. Ogunsola</u>, 87 Ill.2d 216, 420

N.E.2d 861 (1981). (See attached post trial motion)

People's instruction 16A was given over objection which was

a Non-IPI instruction based on 720 ILCS 570.405. 1(b) erroneously

entitled (c) which states in pertinent part as follows:

> "It is not a defense to the offense of criminal
> drug conspiracy that the person or persons with
> whom the defendant is alleged to have conspired
> have not been convicted or are not amenable to
> justice." (Vol II, C. 132, Supp R. 7-10)

Trial counsel provided ineffective assistance when counsel

failed to include in a timely filed post trial motion that trial

court failed to instruct the jury on all essential elements of

the charged crime. No further proof has bee provided. Petitioner

would have provided a copy of the record, but petitioner's tran-

scripts and other legal material was lost by Stateville Correctional

Center, However this claim is based on the record. (See attached

institutional grievance form) (also attached post trial motion)

ISSUE FOUR:    PETITIONER WAS DENIED HIS FEDERAL PROTECTED RIGHTS
WHERE HE IS BEING HELD UNLAWFULLY IN STATE CUSTODY
IN VIOLATION OF LAW, TREATIES AND THE CONSTITUTION
OF THE UNITED STATES WHERE HIS DETENTION VIOLATES
FUNDAMENTAL LIBERTIES SAFEGUARDED AGAINST STATE
ACTION BY THE FEDERAL CONSTITUTION, AMENDMENTS
V,VI, AND XIV WHERE THE TRIAL COURT ABUSED IT'S
DISCRETION SENTENCING PETITIONER TO A UNLAWFUL
DOUBLE ENHANCEMENT SENTENCE.

Petitioner was denied his federal protected rights where he

is being held unlawfully in state custody in violation of law,

treaties and the constitution of the United States where his

detention violates fundamental liberties safeguarded against

(5)

state action by the federal constitution, Amendments 5,6, and 14 where the trial court abused it's discretion by sentencing petitioner to an unlawful double enhancement. People v. Hicks, 164 Ill.2d 218, 647 N.E.2d 257, 207 Ill.Dec. 295.

The Illinois Supreme Court has held that "an element that is inherent to the criminal offense for which the defendant has been tried and convicted cannot be used to also enlarge the term of imprisonment for the defendant's commission of the crime." citing (People v. Furguson (1989) 547 N.E.2d 429; People v. Saldivar (1986) 497 N.E.2d 1138). Following that court's decision, in People v. Owens, 563 N.E.2d 150, the Third District ruled, "It is well settled that a sentencing court cannot use a prior conviction to impose an extended term sentence and also to enhance the seriousness of the offense." citing People v. Hobbs, (1981) 86 Ill.2d 242, 56 Ill.Dec. 363, 427 N.E.2d 558; U.S. v. Torres, 182 F.3d 1156 (10th Cir.1999).

Petitioner was found guilty of unlawful criminal drug conspiracy with prior conviction. Because of the prior conviction, the sentence carries 12 to 60 years in prison. However, counting that same prior conviction, petitioner's sentence was enhanced to an additional 12 to 100 years of which petitioner received 75. (See explanation of possible penalties attached with statutes)

ISSUE FIVE:    PETITIONER WAS DENIED HIS FEDERAL PROTECTED RIGHTS WHERE HE IS BEING HELD UNLAWFULLY IN STATE CUSTODY IN VIOLATION OF LAW, TREATIES AND THE CONSTITUTION OF THE UNITED STATES WHERE HIS DETENTION VIOLATES FUNDAMENTAL LIBERTIES SAFEGUARDED AGAINST STATE ACTION BY THE FEDERAL CONSTITUTION, AMENDMENTS V,VI, AND XIV WHERE TRIAL COUNSEL PROVIDED INEF-FECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO INFORM PETITIONER THAT HE REPRESENTED STATE

WITNESS ALLEN GEORGE IN A PRIOR PROCEEDING AND
PREVENTED DEFENDANT FROM HIS RIGHT TO CROSS EXAMINE
SAID WITNESS AT TRIAL BY TELLING DEFENDANT HE
DIDN'T HAVE A RIGHT TO FACE HIS ACCUSER IN ILLINOIS
PRESENTING A CONFLICT OF INTEREST.

Petitioner was denied his federal protected rights where he is being held unlawfully in state custody in violation of law, treaties and the constitution of the United States where his detention violates fundamental liberties safeguarded against state action by the federal constitution, AMendments 5,6, and 14 where trial counsel provided ineffective assistance of counsel where counsel failed to inform petitioner that he represented state witness Allen George in a prior proceeding and prevented defendant from his right to cross examine or confront said witness at trial be telling defendant he didn't have a right to face his accuser in Illinois, presenting a conflict of interest. Petitioner was entitled to counsel whose undivided loyalties lie with his client. U.S. v. Jeffers, 520 F.2d 1256, 1263 (7th Cir. 1975); U.S. v. Ellison, 789 F.2d 1102 (7th Cir. 1986); Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

Petitioner's attorney labored under an actual conflict that adversely affected his lawyer's performance. The state played a tape recording before the jury with Allen George talking to another person he knew. The tape was never verified independently of police. Petitioner has the right to confront his accusor Allen George. However, petitioner was informed by counsel Asher Geisler, that defendant didn't have a right to face their accusors in Illinois and petitioner being from another state was dependent upon his counsel's advise. Yet counsel, in place of informing petitioner that he represented George in a prior proceeding,

misled petitioner into thinking he had no right to question the state's witness. (See attached record sheet of Allen George.)

WHEREFORE, the petitioner respectfully request the appointment of counsel and and evidentuary hearing not inconsistant with the Post Conviction Hearing Act 725 ILCS 5/122-1.

Respectfully submitted,

*Melvin Farlow*

Melvin Farlow, pro se
Reg. No. K92694
P.O. Box 112
Joliet, Ill. 60434

## VERIFICATION

I, Melvin Farlow, pro se, being first duly sworn, depose and says that he has read the above and foregoing motion, knows the contents thereof and the matter and things therein are true and correct to the best of my knowledge.

*Melvin Farlow*

Melvin Farlow, pro se

SUBSCRIBED and SWORN to before me
This 1st day of June, 2004

*Phyllis Baker*

NOTARY PUBLIC

"OFFICIAL SEAL"
Phyllis Baker
Notary Public, State of Illinois
My Commission Exp. 01/21/2007

(8)

STATE OF ILLINOIS )
                  )SS
COUNTY OF MACON   )


# AFFIDAVIT


Under penalties as provided by law pursuant to 735 ILCS Section 5/109 of the Code of Civil Procedure, I certify that the statements set fourth in the foregoing are true and correct, except as to matters therein stated to on belief, and as to such matters, I certify that I believe the same to be true.

_Melvin Farlow_
(Affiant-Petitioner)


SUBSCRIBED and SWORN to before me
This 1st day of June, 2004.

_Phyllis Baker_
NOTARY PUBLIC

"OFFICIAL SEAL"
Phyllis Baker
Notary Public, State of Illinois
My Commission Exp. 01/21/2007

C\O

STATE OF ILLINOIS )
                 )SS
COUNTY OF MACON   )

## AFFIDAVIT

I, Melvin Farlow, being first duly sworn under oath depose and state that the foregoing is true and correct, and made upon my personal knowledge, and I am competent to testify thereto.

1.) That I am the petitioner in the foregoing Petition for Post Conviction Relief.

2.) That upon my counsel's request, defense was informed by the state prosecutor that the evidence in my trial was lost.

3.) That the prosecution at trial made improper closing argument that prejudiced the jury in my trial by verifying the testimony of the police at trial.

4.) That the trial court failed to instruct the jury on all essential elements of the charged offense.

5.) That I did not attach records of affidavits to my petition because I am incarcerated at the Stateville Correctional Center and have been since my conviction, and can not investigate or contact witness in California, and the department of corrections lost most of my trial transcripts.

6.) That I have filed a complaint through the institutions grievance procedure in order to locate said record.

_Melvin Farlow_
(Affiant)

SUBSCRIBED and SWORN to before me
This 1st day of June, 2004

_Phylli Baker_
NOTARY PUBLIC

```
"OFFICIAL SEAL"
Phyllis Baker
Notary Public, State of Illinois
My Commission Exp. 01/21/2007
```

IN THE
CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
MACON COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS, )    Petition for Post Conviction
                                  )    Relief.
              Respondent,         )
                                  )    Case No. 99 CF 1532
        -Vs-                      )
                                  )    P.C. No._____
MELVIN FARLOW,                    )
                                  )    Honorable
              Petitioner.         )    Scott B. Diamond
                                  )    Judge presiding

MOTION TO PROCEED IN FORMA PAUPERIS
AND APPOINTMENT OF COUNSEL

Petitioner Melvin Farlow, comes before the Court and Respectfully request that he be permitted to file the attached Petition for Post Conviction Relief _in forma pauperis_ and to have an attorney appointed to represent him in this proceeding.

In support of this request, Petitioner states:

1. That he is presently incarcerated in Stateville Correctional Center.

2. That he is without any income or assets with which to pay for the cost of this litigation or to procure counsel.

Wherefore, Petitioner prays that he be granted leave to file and to proceed _in forma pauperis_ in the above captioned Petition for Post Conviction Relief and to have counsel appointed to represent him in this proceeding.

_Melvin Farlow_
Petitioner

C12

STATE OF ILLINOIS )
                 )SS
COUNTY OF MACON  )

## AFFIDAVIT

I Melvin Farlow, pro se, being first duly sworn, depose and says that he has read the foregoing motion, knows the contents thereof and the matter and things therein are true and correct in substance and in fact.

_Melvin Farlow_
Petitioner

SUBSCRIBED and SWORN to before me
This 1st day of June, 2004.

_Phyllis Baker_
NOTARY PUBLIC

"OFFICIAL SEAL"
Phyllis Baker
Notary Public, State of Illinois
My Commission Exp. 01/21/2007

C13



## Record Sheet

The Record Sheet for the selected case is displayed below. You may select additional case information by selecting from the drop-down list below this information.

Home
Search
Write Us
Site Map

**Case: 1997 CF 000445 D 002**
**Litigant: ALLEN, GEORGE**
**Closed Date: 12/19/1997**

| Date | Remarks |
|------|---------|
| 04/04/97 | **Complaint filed on 04/04/1997. |
| 04/04/97 | ------------------------------------------------------------------ |
| 04/04/97 | People present by Ms. Bolton. Verified Information on file. |
| 04/04/97 | Defendant present pursuant to Bond. Defendant tendered a copy of the |
| 04/04/97 | information and admonished as to the charges, penalties, and |
| 04/04/97 | constitutional rights. Defendant's age is 24. Bond is $1,000. |
| 04/04/97 | Appearance/counsel set for 04/25/1997 at 09:00 in courtroom 9. |
| 04/04/97 | ------------------------------------------------------------------ |
| 04/25/97 | People present by Mr. Foote. Defendant present. Final continuance. |
| 04/25/97 | Appearance/counsel set for 05/09/1997 at 09:00 in courtroom 9. |
| 04/25/97 | ------------------------------------------------------------------ |
| 05/09/97 | People present by Mr. Foote. Defendant present. Entry of appearance |
| 05/09/97 | of Asher Geisler. |
| 05/09/97 | Preliminary hrg set for 05/20/1997 at 01:30 in courtroom 9. |
| 05/09/97 | ------------------------------------------------------------------ |
| 05/20/97 | State's Attorney Larry Fichter present. Defendant present with |
| 05/20/97 | counsel, Mr. Geisler. Cause called for preliminary hearing. |
| 05/20/97 | There is probable cause to believe the defendant committed the |
| 05/20/97 | offenses in the information. Pretrial Discovery Order and Answer on |
| 05/20/97 | file. Defendant admonished as to his right to be tried and sentenced |
| 05/20/97 | in absentia. |
| 05/20/97 | Status hearing set for 06/02/1997 at 08:30 in courtroom 5. |
| 05/20/97 | ------------------------------------------------------------------ |
| 06/02/97 | Assistant State's Attorney Jack Ahola present. Defendant present with |
| 06/02/97 | counsel Asher Geisler. Motion by defendant to continue status. No |
| 06/02/97 | objection. Motion allowed. Status continued. Clerk directed to send |
| 06/02/97 | notice to attorney for defendant and defendant of status hearing by |
| 06/02/97 | regular mail. |
| 06/02/97 | Status hearing set for 07/07/1997 at 08:30 in courtroom 5. |
| 06/02/97 | ------------------------------------------------------------------ |
| 06/04/97 | Certificate of mailing on file as of June 4, 1997. (ch) |
| 06/04/97 | ------------------------------------------------------------------ |
| 07/07/97 | Assistant State's Attorney Jay Scott present. Defendant present by |

C14

| | |
|---|---|
| 07/07/97 | counsel Gary Geisler. Motion by defendant to continue status. No |
| 07/07/97 | objection. Motion allowed. Cause reallotted for status. |
| 07/07/97 | Status hearing set for 08/04/1997 at 08:30 in courtroom 5. |
| 07/07/97 | ---------------------------------------------------------------- |
| 08/04/97 | Assistant State's Attorney Jack Ahola present. Defendant present by |
| 08/04/97 | counsel Asher Geisler. Cause allotted for pre-trial. |
| 08/04/97 | Pre-trial/sch conf set for 10/06/1997 at 09:30 in courtroom 5. |
| 08/04/97 | ---------------------------------------------------------------- |
| 09/08/97 | Additional Answer to Pre-Trial Discovery Order on file . (cp) |
| 09/08/97 | ---------------------------------------------------------------- |
| 10/06/97 | Assistant State's Attorney Jack Ahola present. Defendant present by |
| 10/06/97 | counsel Asher O. Geisler. Cause allotted for disposition. |
| 10/06/97 | Disposition hrg set for 10/08/1997 at 01:30 in courtroom 5. |
| 10/06/97 | ---------------------------------------------------------------- |
| 10/08/97 | Assistant State's Attorney Mary Bolton present. Defendant present by |
| 10/08/97 | counsel Asher O. Geisler. On motion of defendant, cause continued. |
| 10/08/97 | Disposition hrg set for 10/22/1997 at 01:30 in courtroom 5. |
| 10/08/97 | ---------------------------------------------------------------- |
| 10/22/97 | Assistant State's Attorney Mary Bolton present. Defendant present |
| 10/22/97 | with counsel Asher O. Geisler. Defendant waives his rights, files |
| 10/22/97 | waiver of trial by jury, and pleads guilty to Count II. Remaining |
| 10/22/97 | counts as to this defendant dismissed. Court accepts the plea and |
| 10/22/97 | finds the defendant has been advised of his rights, that he understand |
| 10/22/97 | his rights and the consequences of his plea; further, that he under- |
| 10/22/97 | stands the possible penalties for the offense and persists in the plea |
| 10/22/97 | of guilty. Finding there is a factual basis for the plea and that the |
| 10/22/97 | plea was made voluntarily without any threats or promises. Cause |
| 10/22/97 | referred to the Probation Department for preparation of presentence |
| 10/22/97 | report. Cause allotted for sentencing hearing. |
| 10/22/97 | Sentencing hearing set for 11/25/1997 at 09:00 in courtroom 5. |
| 10/22/97 | ---------------------------------------------------------------- |
| 11/20/97 | Pre-Sentence Report on file as of Nov. 20, 1997. (ch) |
| 11/20/97 | ---------------------------------------------------------------- |
| 11/25/97 | Assistant State's Attorney Richard Current present. Defendant present |
| 11/25/97 | with counsel Asher O. Geisler. Cause called for sentencing hearing. |
| 11/25/97 | Motion by People to continue. Motion allowed. Defendant directed to |
| 11/25/97 | appear. |
| 11/25/97 | Sentencing hearing set for 12/12/1997 at 09:00 in courtroom 625. |
| 11/25/97 | ---------------------------------------------------------------- |
| 12/12/97 | Assistant State's Attorney Richard Current present. Defendant present |
| 12/12/97 | with counsel Asher O. Geisler. Cause called for sentencing hearing. |
| 12/12/97 | Evidence heard. On motion of defendant, cause referred for Intensive |
| 12/12/97 | Probatin Supervision evaluation. Cause continued. |
| 12/12/97 | Sentencing hearing set for 12/19/1997 at 09:00 in courtroom 625. |
| 12/12/97 | ---------------------------------------------------------------- |
| 12/19/97 | Assistant State's Attorney Mary Bolton present. Defendant present |
| 12/19/97 | with counsel Asher O. Geisler. Cause called for sentencing hearing. |

| | |
|---|---|
| 12/19/97 | Evidence heard. Court having considered the plea of guilty, the |
| 12/19/97 | statutory factors of aggravation and mitigation, the arguments of |
| 12/19/97 | counsel, the sentencing alternatives and the defendant's right of |
| 12/19/97 | allocution, court concurs with the plea agreement. Defendant is |
| 12/19/97 | sentenced to the Department of Corrections for a period of 2 years |
| 12/19/97 | with credit for time served of 1 day. Defendant admonished pursuant |
| 12/19/97 | to Supreme Court Rule 605(b). Bond forfeited and applied to fees and |
| 12/19/97 | costs. Defendant remanded to custody of the sheriff. Mittimus |
| 12/19/97 | ordered to issue. |
| 12/19/97 | ------------------------------------------------------------------- |
| 01/07/98 | Sentencing Judgment Illinois Department Of Corrections filed. |
| 01/07/98 | ------------------------------------------------------------------- |

## MORE INFORMATION?

To view additional information about this case, select the type of information below and click **Display Case Info!**

| Civil Disposition | | **Display Case Info** | | **New Search?** |
|---|---|---|---|---|

Office of the Circuit Clerk | Court Information | Courthouse Map & Parking
Staff Directory | What's New in Macon County

Home | Search | Write Us | Site Map

Criminal Disposition                                                    Page 1 of 1



## Criminal Disposition

The Criminal Disposition for the selected case is displayed below. You may select additional case information by selecting from the drop-down list below this information.

HOME

SEARCH

WRITE US

SITE MAP

Case: 1997 CF 000445 D 002

Litigant: ALLEN, GEORGE

| Cnt | Chg | Dsp | Snt | Charge/Disp/Sentence | | Inc/Plea | |
|-----|-----|-----|-----|----------------------|--------|----------|---------------|
| | | | | | Status | Date | Yr-Mo-Dys-Hrs |
| 01 | 01 | | | FELON POSS/USE WEAPON/FIREARM | | /Guilty | |
| 01 | 01 | 01 | | Guilty | | 12/19/1997 | |
| 01 | 01 | 01 | 01 | DOC | In force | 12/19/1997 | 02-00-000-000 |
| 02 | 01 | | | POSS CANNABIS/10-30 GRAM/1ST | | | |
| 02 | 01 | 01 | | Dismiss/State Motion | | 12/19/1997 | |

MORE INFORMATION?

To view additional information about this case, select the type of information below and click **Display Case Info!**

Record Sheet    Display Case Info!   New Search?

Office of the Circuit Clerk | Court Information | Courthouse Map & Parking
Staff Directory | What's New in Macon County

Home | Search | Write Us | Site Map

C17

# ATTENTION

GRIEVANCE FORM NOT INCLUDED BASED ON COPY MALFUNCTION, FORM WILL BE SUBMITTED IN MOTION TO AMEND EXHIBIT.

IN THE CIRCUIT COURT FOR THE SIXTH JUDICIAL CIRCUIT

MACON COUNTY,  DECATUR,  ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | **FILED** |
| ) | **DEC 19 2000** |
| Plaintiff, ) | Kathy A. Hott |
| ) | Circuit Clerk |
| -vs- ) | |
| ) | |
| MELVIN LEE FARLOW, ) | Docket No.  99-CF-1532 |
| ) | |
| Defendant, ) | |

## M O T I O N

Now comes the Defendant by his attorneys, Geisler Law Offices, and respectfully

files herein his motion for a judgement notwithstanding the verdict, or, in the alternative for a new

trial, and alleges as follows:

1. That this matter came on for a jury trial on December 11, 2000 and that the jury

returned a verdict of guilty as to Count IV Conspiracy on December 15, 2000 and failed to return

a verdict on Counts I and II and the Court entered judgment on Count IV and declared a mistrial

as to counts I and II on December 15, 2000.

2. That this motion is timely filed within 30 days of the said order of this court and

the return of the verdict herein by the jury.

3. That the court erred in not granting the Defendant's motion at the close of the

People's evidence and of all of the evidence in this case for a motion for directed verdict in favor

of the Defendant as the evidence in this cause was not sufficient to prove the Defendant guilty

beyond a reasonable doubt.

C19

4.  That the court further erred in allowing evidence of other crimes to be introduced into this case as to the events and the drugs found in the State of California as no charges were ever filed therein and the People argued that it was a part of the "res gestae" but in fact it was not and none of the exceptions that the court found to apply to the other crimes did in fact apply to those facts and the prejudice of this crime far outweighed the probative value thereof and the Court erred in allowing said evidence to be heard by the jury.

5.  That the evidence in this cause was not sufficient to prove the guilt of the Defendant beyond a reasonable doubt.

WHEREFORE IT IS PRAYED that the court will set aside the verdict of the jury herein as to Count IV and will enter a judgement of not guilty of the crime of conspiracy, or, in the alternative that the court will set aside the verdict of the jury and order a new trial herein; and,

FURTHER, that the court will grant such other and further relief as may be proper herein.

Melvin Lee Farlow,   Defendant

BY:  _____
                  One of His Attorneys

c20

## PROOF OF NOTICE

The undersigned, upon his oath says that he mailed a true, accurate and correct copy of the foregoing pleading to the following named persons at the address/es set forth after their names in an envelope so addressed after it was properly sealed and with the correct postage thereon by placing the same in the United States Mail service on December 19, 2000.

Mr. Jay Scott
Assistant States Attorney
Macon County Courthouse – Fourth Floor
253 E. Wood Street
Decatur, Illinois 62523

_____
Asher O. Geisler

**GEISLER LAW OFFICES**
**241 S. Main Street - P. O. Box 1547**
**Decatur, Illinois 62525-1547**
**Phone 423-8081 ( AC 217 )**

## EXPLANATION OF POSSIBLE PENALTIES FOR
## MELVIN LEE FARLOW
## UNDER VARIOUS COUNTS

**Count I.** Controlled substance trafficking with a prior conviction;

    Sentence 24 to 200 years

    Under 5670/401.1:   Under this section (b) the prison term is twice the minimum under Sec. 401 which is 12 to 50 for over 400 and under 900.  Under Sec. 408 it raises it to twice the maximum if there is a prior conviction.  Hence since 401 is 12 to 50 that makes it 24 to 100 and then the max is doubled under 408 to 24 to 200.

**Count II.**  Unlawful deliver of a controlled substance with a prior conviction;

    Sentence 12 to 100 years

    Under Sec. 570/401 (a)(2)(C) the sentence is 12 to 50 and it is enhanced by the operation of 408 to a 100 year max.

**Count III.**  Unlawful delivery of a controlled substance with a prior conviction.

    Sentence 12 to 100 years

    This is the same as Count II above.  The difference is that Count II alleges a delivery to one "George Allen" and Count III alleges only a possession with intent to deliver.

**Count IV.**  Unlawful criminal drug conspiracy with a prior conviction.

    Sentence 12 to 60 years

    Under Sec. 570/405.1 you can be sentenced to the same as the underlying charge which is 12 to 50 years and it can be enhanced by 408 to 12 to 100 years

**Count V.**  Unlawful possession of a controlled substance with a prior conviction.

    Sentence is 8 to 80 years.

    Under Sec. 570/402 the penalty for possession is 8 to 40 and the max is enhanced to double under 408 or 8 to 80.

**FIRST FFENDER**

415                         CRIMINAL OFFENSES                    720 ILCS 570/401

(i) The Department may compile statistical reports from the information described in subsection (a). The reports must not include information that identifies any practitioner, ultimate user, or other person administering a controlled substance.

P.A. 77-757, § 318, added by P.A. 91-576, § 5, eff. April 1, 2000.

### 570/319. Rules

§ 319. Rules. The Department must adopt rules under the Illinois Administrative Procedure Act [1] to implement Sections 316 through 318, including the following:

(1) Information collection and retrieval procedures for the central repository, including the Schedule II controlled substances to be included in the program required under Section 316.

(2) Design for the creation of the database required under Section 317.

(3) Requirements for the development and installation of on-line electronic access by the Department to information collected by the central repository.

P.A. 77-757, § 319, added by P.A. 91-576, § 5, eff. April 1, 2000.

1 5 ILCS 100/1-1 et seq.

### 570/320. Advisory committee

§ 320. Advisory committee.

(a) The Secretary of Human Services must appoint an advisory committee to assist the Department in implementing the Schedule II controlled substance prescription monitoring program created by Section 316 of this Act. The Advisory Committee consists of prescribers and dispensers.

(b) The Secretary of Human Services must determine the number of members to serve on the advisory committee. The Secretary must choose one of the members of the advisory committee to serve as chair of the committee.

(c) The advisory committee may appoint its other officers as it deems appropriate.

(d) The members of the advisory committee shall receive no compensation for their services as members of the advisory committee but may be reimbursed for their actual expenses incurred in serving on the advisory committee.

P.A. 77-757, § 320, added by P.A. 91-576, § 5, eff. April 1, 2000.

### ARTICLE IV.  VIOLATIONS AND PENALTIES

Section
570/401.    Manufacture or delivery unauthorized by Act; penalties.
570/401.1.  Controlled substance trafficking.
570/401.2.  Repealed.
570/401.5.  Chemical breakdown of illicit controlled substance.
570/402.    Possession unauthorized by this Act; penalty.
570/402.1.  Repealed.
570/403.    Repealed.
570/404.    Look-alike substances—Manufacture, distribution, advertisement or possession—Penalty.
570/405.    Calculated criminal drug conspiracy; penalty.
570/405.1.  Criminal drug conspiracy.
570/405.2.  Streetgang criminal drug conspiracy.
570/406.    Miscellaneous violations; penalties.
570/406.1.  Permitting unlawful use of a building.

Section
570/407.    Delivery of controlled, counterfeit or look-alike substances; persons under 18; truck stops or safety rest areas; school property; places of religious worship.
570/407.1.  Persons 18 or older using, engaging or employing persons under 18 to deliver controlled, counterfeit or look-alike substances.
570/407.2.  Delivery of a controlled substance to a pregnant woman.
570/408.    Second or subsequent offenses—Enhancement of penalties.
570/409.    Federal or state conviction or acquittal as bar to prosecution—Exceptions.
570/410.    First offender; probation.
570/411.    Sentencing—Matters considered.
570/411.1.  Fines; determinative factors; extension of time for payment.
570/411.2.  Assessments.
570/412.    Penalties as addition to civil or administrative penalties.
570/413.    Proceeds of fines for drug-related offenses; allocation and use; funds.

### 570/401.  Manufacture or delivery unauthorized by Act; penalties

§ 401. Except as authorized by this Act, it is unlawful for any person knowingly to: (i) manufacture or deliver, or possess with intent to manufacture or deliver, a controlled or counterfeit substance or controlled substance analog or (ii) possess any methamphetamine manufacturing chemical listed in paragraph (z-1) of Section 102 with the intent to manufacture methamphetamine or the salt of an optical isomer of methamphetamine or an analog thereof. A violation of this Act with respect to each of the controlled substances listed herein constitutes a single and separate violation of this Act. For purposes of this Section, "controlled substance analog" or "analog" means a substance which is intended for human consumption, other than a controlled substance, that has a chemical structure substantially similar to that of a controlled substance in Schedule I or II, or that was specifically designed to produce an effect substantially similar to that of a controlled substance in Schedule I or II. Examples of chemical classes in which controlled substance analogs are found include, but are not limited to, the following: phenethylamines, N-substituted piperidines, morphinans, ecgonines, quinazolinones, substituted indoles, and arylcycloalkylamines. For purposes of this Act, a controlled substance analog shall be treated in the same manner as the controlled substance to which it is substantially similar.

(a) Any person who violates this Section with respect to the following amounts of controlled or counterfeit substances or controlled substance analogs, notwithstanding any of the provisions of subsections (c), (c-5), (d), (d-5), (e), (f), (g) or (h) to the contrary, is guilty of a Class X felony and shall be sentenced to a term of imprisonment as provided in this subsection (a) and fined as provided in subsection (b):

(1) (A) not less than 6 years and not more than 30 years with respect to 15 grams or more but less than 100 grams of a substance containing heroin, or an analog thereof;

(B) not less than 9 years and not more than 40 years with respect to 100 grams or more but less than 400 grams of a substance containing heroin, or an analog thereof;

(C) not less than 12 years and not more than 50 years with respect to 400 grams or more but less than 900



.20 ILCS 570/401          CRIMINAL OFFENSES                    416        417

grams of a substance containing heroin, or an analog thereof;

(D) not less than 15 years and not more than 60 years with respect to 900 grams or more of any substance containing heroin, or an analog thereof;

(2) (A) not less than 6 years and not more than 30 years with respect to 15 grams or more but less than 100 grams of a substance containing cocaine, or an analog thereof;

(B) not less than 9 years and not more than 40 years with respect to 100 grams or more but less than 400 grams of a substance containing cocaine, or an analog thereof;

(C) not less than 12 years and not more than 50 years with respect to 400 grams or more but less than 900 grams of a substance containing cocaine, or an analog thereof;

(D) not less than 15 years and not more than 60 years with respect to 900 grams or more of any substance containing cocaine, or an analog thereof;

(3) (A) not less than 6 years and not more than 30 years with respect to 15 grams or more but less than 100 grams of a substance containing morphine, or an analog thereof;

(B) not less than 9 years and not more than 40 years with respect to 100 grams or more but less than 400 grams of a substance containing morphine, or an analog thereof;

(C) not less than 12 years and not more than 50 years with respect to 400 grams or more but less than 900 grams of a substance containing morphine, or an analog thereof;

(D) not less than 15 years and not more than 60 years with respect to 900 grams or more of a substance containing morphine, or an analog thereof;

(4) 200 grams or more of any substance containing peyote, or an analog thereof;

(5) 200 grams or more of any substance containing a derivative of barbituric acid or any of the salts of a derivative of barbituric acid, or an analog thereof;

(6) 200 grams or more of any substance containing amphetamine or any salt of an optical isomer of amphetamine, or an analog thereof;

(6.5) (A) not less than 6 years and not more than 30 years with respect to 15 grams or more but less than 100 grams of a substance containing methamphetamine or any salt of an optical isomer of methamphetamine, or an analog thereof;

(B) not less than 9 years and not more than 40 years with respect to 100 grams or more but less than 400 grams of a substance containing methamphetamine or any salt of an optical isomer of methamphetamine, or an analog thereof;

(C) not less than 12 years and not more than 50 years with respect to 400 grams or more but less than 900 grams of a substance containing methamphetamine or any salt of an optical isomer of methamphetamine, or an analog thereof;

(D) not less than 15 years and not more than 60 years with respect to 900 grams or more of any substance containing methamphetamine or any salt of an optical isomer of methamphetamine, or an analog thereof.

(6.6) (A) not less than 6 years and not more than 30 years for the possession of any methamphetamine manu-

facturing chemical set forth in paragraph (z–1) of Section 102 with intent to manufacture 30 grams or more but less than 150 grams of any substance containing methamphetamine, or salt of any optical isomer of methamphetamine, or an analog thereof;

(B) not less than 6 years and not more than 40 years for the possession of any methamphetamine manufacturing chemical set forth in paragraph (z–1) of Section 102 with intent to manufacture 150 grams or more but less than 500 grams of any substance containing methamphetamine, or salt of an optical isomer of methamphetamine, or an analog thereof;

(C) not less than 6 years and not more than 50 years for the possession of any methamphetamine manufacturing chemical set forth in paragraph (z–1) of Section 102 with intent to manufacture 500 grams or more but less than 1200 grams of any substance containing methamphetamine, or salt of an optical isomer of methamphetamine, or an analog thereof;

(D) not less than 6 years and not more than 60 years for the possession of any methamphetamine manufacturing chemical set forth in paragraph (z–1) of Section 102 with intent to manufacture 1200 grams or more of any substance containing methamphetamine, or salt of an optical isomer of methamphetamine, or an analog thereof;

(7) (A) not less than 6 years and not more than 30 years with respect to: (i) 15 grams or more but less than 100 grams of a substance containing lysergic acid diethylamide (LSD), or an analog thereof, or (ii) 15 or more objects or 15 or more segregated parts of an object or objects but less than 200 objects or 200 segregated parts of an object or objects containing in them or having upon them any amounts of any substance containing lysergic acid diethylamide (LSD), or an analog thereof;

(B) not less than 9 years and not more than 40 years with respect to: (i) 100 grams or more but less than 400 grams of a substance containing lysergic acid diethylamide (LSD), or an analog thereof, or (ii) 200 or more objects or 200 or more segregated parts of an object or objects but less than 600 objects or less than 600 segregated parts of an object or objects containing in them or having upon them any amount of any substance containing lysergic acid diethylamide (LSD), or an analog thereof;

(C) not less than 12 years and not more than 50 years with respect to: (i) 400 grams or more but less than 900 grams of a substance containing lysergic acid diethylamide (LSD), or an analog thereof, or (ii) 600 or more objects or 600 or more segregated parts of an object or objects but less than 1500 objects or 1500 segregated parts of an object or objects containing in them or having upon them any amount of any substance containing lysergic acid diethylamide (LSD), or an analog thereof;

(D) not less than 15 years and not more than 60 years with respect to: (i) 900 grams or more of any substance containing lysergic acid diethylamide (LSD), or an analog thereof, or (ii) 1500 or more objects or 1500 or more segregated parts of an object or objects containing in them or having upon them any amount of a substance containing lysergic acid diethylamide (LSD), or an analog thereof;

(8) 30 grams or more of any substance containing pentazocine or any of the salts, isomers and salts of isomers of pentazocine, or an analog thereof;

(9) 30 grams or more of any substance containing methaqualone or any of the salts, isomers and salts of isomers of methaqualone, or an analog thereof;

(10) 30 grams or more of any substance containing phencyclidine or any of the salts, isomers and salts of isomers of phencyclidine (PCP), or an analog thereof;

(10.5) 30 grams or more of any substance containing ketamine or any of the salts, isomers and salts of isomers of ketamine, or an analog thereof;

(11) 200 grams or more of any substance containing any other controlled substance classified in Schedules I or II, or an analog thereof, which is not otherwise included in this subsection.

(b) Any person sentenced with respect to violations of paragraph (1), (2), or (3) of subsection (a) involving 100 grams or more of the controlled substance named therein, may in addition to the penalties provided therein, be fined an amount not to exceed the full street value of the controlled substances seized. "Street value" shall be determined by the court on the basis of testimony of law enforcement personnel and the defendant as to the amount seized and such testimony as may be required by the court as to the current street value of the controlled substance seized.

(c) Any person who violates any of the provisions of the following amounts of controlled or counterfeit substances or controlled substance analogs, notwithstanding any of the provisions of subsections (a), (b), (d), (e), (f), (g) or (h) to the contrary, is guilty of a Class 1 felony. The fine for violation of this subsection shall not be more than $250,000:

(1) 10 grams or more but less than 15 grams of any substance containing heroin, or an analog thereof;

(2) 10 grams or more but less than 15 grams of any substance containing cocaine, or an analog thereof;

(3) 10 grams or more but less than 15 grams of any substance containing morphine, or an analog thereof;

(4) 50 grams or more but less than 200 grams of any substance containing peyote, or an analog thereof;

(5) 50 grams or more but less than 200 grams of any substance containing a derivative of barbituric acid or any of the salts of a derivative of barbituric acid, or an analog thereof;

(6) 50 grams or more but less than 200 grams of any substance containing amphetamine or any salt of an optical isomer of amphetamine, or an analog thereof;

(6.5) 5 grams or more but less than 15 grams of any substance containing methamphetamine or any salt of an optical isomer of methamphetamine, or an analog thereof;

(7) (i) 5 grams or more but less than 15 grams of any substance containing lysergic acid diethylamide (LSD), or an analog thereof, or (ii) more than 10 objects but less than 15 objects or more than 10 segregated parts but less than 15 objects containing in them or having upon them any amount of any substance containing lysergic acid diethylamide (LSD), or an analog thereof;

(8) 10 grams or more but less than 30 grams of any substance containing pentazocine or any of the salts, isomers and salts of isomers of pentazocine, or an analog thereof;

(9) 10 grams or more but less than 30 grams of any substance containing methaqualone or any of the salts, isomers and salts of isomers of methaqualone, or an analog thereof;



720 ILCS 570/401      CRIMINAL OFFENSES      418     419

7, 1982; P.A. 83–655, § 1, eff. Jan. 1, 1984; P.A. 83–778, Art. § 4, eff. Jan. 1, 1984; P.A. 83–1362, Art. II, § 73, eff. Sept. ., 1984; P.A. 84–1314, § 1, eff. Jan. 1, 1987; P.A. 84–1475, § 4, eff. Feb. 5, 1987; P.A. 85–1030, § 4, eff. July 1, 1988; P.A. 85–1209, Art. III, § 3–48, eff. Aug. 30, 1988; P.A. 85–1440, Art. II, § 2–54, eff. Feb. 1, 1989; P.A. 86–266, § 1, eff. Jan. 1, 1990; P.A. 86–442, § 1, eff. Jan. 1, 1990; P.A. 86–604, § 1, eff. Jan. 1, 1990; P.A. 87–754, § 2, eff. Sept. 29, 1991; P.A. 89–404, § 25, eff. Aug. 20, 1995; P.A. 90–382, § 5, eff. Aug. 15, 1997; P.A. 90–593, § 25, eff. June 19, 1998; P.A. 90–674, § 5, eff. Jan. 1, 1999; P.A. 91–336, § 5, eff. Jan. 1, 2000; P.A. 91–357, § 240, eff. July 29, 1999; P.A. 91–403, § 5, eff. Jan. 1, 2000.

Formerly Ill.Rev.Stat.1991, ch. 56 ½, ¶ 1401.

¹ 725 ILCS 5/110–5.

² 21 U.S.C.A. § 355.

### Validity

*Public Act 89–404, which amended this section, has been held unconstitutional in its entirety for violating the single-subject rule of the state Constitution by the Supreme Court of Illinois in the case of People v. Reedy, 1999, 186 Ill.2d 1, 237 Ill.Dec. 74, 708 N.E.2d 1114, rehearing denied.*

P.A. 91–336, in subpar. (a)(6.5), in item (B), substituted "9 years" for "6 years"; in item (C), substituted "12 years" for "6 years"; in item (D), substituted "15 years" for "6 years"; and in subpar. (d), in item (iii), inserted "amphetamine or" in two places.

P.A. 91–357, the First 1999 General Revisory Act, amended various Acts to delete obsolete text, to correct patent and technical errors, to revise cross references, to resolve multiple actions in the 90th General Assembly and to make certain technical corrections in P.A. 90–567 through P.A. 90–810.

P.A. 91–403, in the first paragraph, in the first sentence, designated the items and added item (ii); in subpar. (a), in the introductory paragraph, inserted references to subsections (c–5) and (d–5); inserted subpars. (a)(6.6), (c–5) and (d–5).

See 5 ILCS 70/6 as to the effect of (1) more than one amendment of a section at the same session of the General Assembly or (2) two or more acts relating to the same subject matter enacted by the same General Assembly.

### 570/401.1.  Controlled substance trafficking

§ 401.1.  Controlled Substance Trafficking.  (a) Except for purposes as authorized by this Act, any person who knowingly brings or causes to be brought into this State for the purpose of manufacture or delivery or with the intent to manufacture or deliver a controlled or counterfeit substance in this or any other state or country is guilty of controlled substance trafficking.

(b) A person convicted of controlled substance trafficking shall be sentenced to a term of imprisonment not less than twice the minimum term and fined an amount as authorized by Section 401 of this Act, based upon the amount of controlled or counterfeit substance brought or caused to be brought into this State, and not more than twice the maximum term of imprisonment and fined twice the amount as authorized by Section 401 of this Act, based upon the amount of controlled or counterfeit substance brought or caused to be brought into this State.

(c) It shall be a Class 2 felony for which a fine not to exceed $100,000 may be imposed for any person to knowingly use a cellular radio telecommunication device in the further-

ance of controlled substance trafficking.  This penalty shall be in addition to any other penalties imposed by law.

P.A. 77–757, § 401.1, added by P.A. 85–743, § 2, eff. Sept. 22, 1987.  Amended by P.A. 85–1294, § 1, eff. Jan. 1, 1989; P.A. 86–1391, § 1, eff. Jan. 1, 1991.

Formerly Ill.Rev.Stat.1991, ch. 56 ½, ¶ 1401.1.

P.A. 85–1003, § 3, which added another § 401.1 eff. July 1, 1988, was repealed by P.A. 85–1030, § 1, eff. June 30, 1988.

### 570/401.2.  § 401.2.  Repealed by P.A. 86–266, § 2, eff. Jan. 1, 1990; P.A. 86–442, § 2, eff. Jan. 1, 1990

### 570/401.5.  Chemical breakdown of illicit controlled substance

§ 401.5.  Chemical breakdown of illicit controlled substance.

(a) It is unlawful for any person to manufacture a controlled substance prohibited by this Act by chemically deriving the controlled substance from one or more other controlled substances prohibited by this Act.

(a–5) It is unlawful for any person to possess any substance with the intent to use the substance to facilitate the manufacture of any controlled or counterfeit substance or controlled substance analog other than as authorized by this Act.

(b) A violation of this Section is a Class 4 felony.

(c) This Section does not apply to the manufacture of methamphetamine or to the possession of any methamphetamine manufacturing chemicals with the intent to manufacture methamphetamine or any salt of an optical isomer of methamphetamine, or an analog of methamphetamine.

P.A. 77–757, § 401.5, added by P.A. 88–283, § 5, eff. Jan. 1, 1994.  Amended by P.A. 90–775, § 10, eff. Jan. 1, 1999; P.A. 91–403, § 5, eff. Jan. 1, 2000.

### 570/402.  Possession unauthorized by this Act; penalty

§ 402.  Except as otherwise authorized by this Act, it is unlawful for any person knowingly to possess a controlled or counterfeit substance.  A violation of this Act with respect to each of the controlled substances listed herein constitutes a single and separate violation of this Act.

(a) Any person who violates this Section with respect to the following controlled or counterfeit substances and amounts, notwithstanding any of the provisions of subsections (c) and (d) to the contrary, is guilty of a Class 1 felony and shall, if sentenced to a term of imprisonment, be sentenced as provided in this subsection (a) and fined as provided in subsection (b):

(1) (A) not less than 4 years and not more than 15 years with respect to 15 grams or more but less than 100 grams of a substance containing heroin;

(B) not less than 6 years and not more than 30 years with respect to 100 grams or more but less than 400 grams of a substance containing heroin;

(C) not less than 8 years and not more than 40 years with respect to 400 grams or more but less than 900 grams of any substance containing heroin;

(D) not less than 10 years and not more than 50 years with respect to 900 grams or more of any substance containing heroin;

nce of controlled substance trafficking. This penalty shall
e in addition to any other penalties imposed by law.

?.A. 77–757, § 401.1, added by P.A. 85–743, § 2, eff. Sept. 22,
987.  Amended by P.A. 85–1294, § 1, eff. Jan. 1, 1989; P.A.
6–1391, § 1, eff. Jan. 1, 1991.

Formerly Ill.Rev.Stat.1991, ch. 56 ½, ¶ 1401.1.

P.A. 85–1003, § 3, which added another § 401.1 eff. July 1, 1988,
was repealed by P.A. 85–1030, § 1, eff. June 30, 1988.

i70/401.2.  § 401.2.  Repealed by P.A. 86–266, § 2,
            eff. Jan. 1, 1990;  P.A. 86–442, § 2, eff.
            Jan. 1, 1990

i70/401.5.  Chemical breakdown of illicit
            controlled substance

§ 401.5.  Chemical breakdown of illicit controlled sub-
tance.

(a) It is unlawful for any person to manufacture a con-
rolled substance prohibited by this Act by chemically deriv-
ng the controlled substance from one or more other con-
rolled substances prohibited by this Act.

(a–5) It is unlawful for any person to possess any sub-
tance with the intent to use the substance to facilitate the
manufacture of any controlled or counterfeit substance or
ontrolled substance analog other than as authorized by this
Act.

(b) A violation of this Section is a Class 4 felony.

(c) This Section does not apply to the manufacture of
net     hetamine or to the possession of any methamphet-
mine manufacturing chemicals with the intent to manufac-
ure methamphetamine or any salt of an optical isomer of
nethamphetamine, or an analog of methamphetamine.

?.A. 77–757, § 401.5, added by P.A. 88–283, § 5, eff. Jan. 1,
994.  Amended by P.A. 90–775, § 10, eff. Jan. 1, 1999; P.A.
11–403, § 5, eff. Jan. 1, 2000.

i70/402.  Possession unauthorized by this Act;
          penalty

§ 402.  Except as otherwise authorized by this Act, it is
inlawful for any person knowingly to possess a controlled or
:ounterfeit substance.  A violation of this Act with respect to
:ach of the controlled substances listed herein constitutes a
iingle and separate violation of this Act.

(a) Any person who violates this Section with respect to
he following controlled or counterfeit substances and
imounts, notwithstanding any of the provisions of subsec-
ions (c) and (d) to the contrary, is guilty of a Class 1 felony
ind shall, if sentenced to a term of imprisonment, be sen-
enced as provided in this subsection (a) and fined as provid-
:d in subsection (b):

(1) (A) not less than 4 years and not more than 15 years
with respect to 15 grams or more but less than 100
grams of a substance containing heroin;

(B) not less than 6 years and not more than 30 years
with respect to 100 grams or more but less than 400
grams of a substance containing heroin;

(C) not less than 8 years and not more than 40 years
with respect to 400 grams or more but less than 900
grams of any substance containing heroin;

D) not less than 10 years and not more than 50 years
.r respect to 900 grams or more of any substance
containing heroin;

(2) (A) not less than 4 years and not more than 15 years
with respect to 15 grams or more but less than 100
grams of any substance containing cocaine;

(B) not less than 6 years and not more than 30 years
with respect to 100 grams or more but less than 400
grams of any substance containing cocaine;

(C) not less than 8 years and not more than 40 years
with respect to 400 grams or more but less than 900
grams of any substance containing cocaine;

(D) not less than 10 years and not more than 50 years
with respect to 900 grams or more of any substance
containing cocaine;

(3) (A) not less than 4 years and not more than 15 years
with respect to 15 grams or more but less than 100
grams of any substance containing morphine;

(B) not less than 6 years and not more than 30 years
with respect to 100 grams or more but less than 400
grams of any substance containing morphine;

(C) not less than 6 years and not more than 40 years
with respect to 400 grams or more but less than 900
grams of any substance containing morphine;

(D) not less than 10 years and not more than 50 years
with respect to 900 grams or more of any substance
containing morphine;

(4) 200 grams or more of any substance containing
peyote;

(5) 200 grams or more of any substance containing a
derivative of barbituric acid or any of the salts of a
derivative of barbituric acid;

(6) 200 grams or more of any substance containing
amphetamine or any salt of an optical isomer of amphet-
amine;

(6.5) (A) not less than 4 years and not more than 15
years with respect to 15 grams or more but less than
100 grams of a substance containing methamphetamine
or any salt of an optical isomer of methamphetamine;

(B) not less than 6 years and not more than 30 years
with respect to 100 grams or more but less than 400
grams of a substance containing methamphetamine or
any salt of an optical isomer of methamphetamine;

(C) not less than 8 years and not more than 40 years
with respect to 400 grams or more but less than 900
grams of a substance containing methamphetamine or
any salt of an optical isomer of methamphetamine;

(D) not less than 10 years and not more than 50 years
with respect to 900 grams or more of any substance
containing methamphetamine or any salt of an optical
isomer of methamphetamine;

(7) (A) not less than 4 years and not more than 15 years
with respect to: (i) 15 grams or more but less than 100
grams of any substance containing lysergic acid diethyl-
amide (LSD), or an analog thereof, or (ii) 15 or more
objects or 15 or more segregated parts of an object or
objects but less than 200 objects or 200 segregated parts
of an object or objects containing in them or having
upon them any amount of any substance containing
lysergic acid diethylamide (LSD), or an analog thereof;

(B) not less than 6 years and not more than 30 years
with respect to: (i) 100 grams or more but less than 400
grams of any substance containing lysergic acid diethyl-
amide (LSD), or an analog thereof, or (ii) 200 or more
objects or 200 or more segregated parts of an object or
objects but less than 600 objects or less than 600 segre-
gated parts of an object or objects containing in them or

having upc
ing lysergi
of;

(C) not
with respe
grams of a
. amide (LS
objects or
objects bu
parts of a
having upc
ing lysergi
of;

(D) not
with respe
containing
log thereo:
segregatec
them or h
containing
log thereof

(8) 30 gra
zocine or an
pentazocine,

(9) 30 gra
thaqualone o
of methaqual

(10) 30 g
phencyclidine
isomers of pl

(10.5) 30
ketamine or
of ketamine;

(11) 200 g
substance cl
which is not

(b) Any per
paragraph (1),
100 grams or i
in, may in addi
an amount not
the controlled
er.  The term
in Section 110-
Any person se
subsection (a)
therein, be fine

(c) Any per:
amount of a c
in subsection (
for a violation
be more than :

(d) Any per
any amount o:
meanor for th
subsequent o:
conviction.

P.A. 77–757, §
2723, § 1, eff
1973;  P.A. 81
eff. Jan. 1, 19
83–655, § 1, (
Jan. 1, 1984;
P.A. 84–1475,
July 1, 1988;
1988;  P.A. 8:





FIRST
FFENDER

or other interest subject to forfeiture under this Section, as it deems proper.

P.A. 77-757, § 405, eff. Aug. 16, 1971. Amended by P.A. 77-2723, § 1, eff. Jan. 1, 1973; P.A. 78-255, § 61, eff. Oct. 1, 1973; P.A. 79-1362, § 13, eff. Oct. 1, 1976; P.A. 80-1099, § 3[4], eff. Feb. 1, 1978; P.A. 83-778, Art. I, § 4, eff. Jan. 1, 1984; P.A. 87-754, § 2, eff. Sept. 29, 1991; P.A. 91-357, § 240, eff. July 29, 1999.

Formerly Ill.Rev.Stat.1991, ch. 56½, ¶ 1405.

### 570/405.1.  Criminal drug conspiracy

§ 405.1.  (a) Elements of the offense.  A person commits criminal drug conspiracy when, with the intent that an offense set forth in Section 401, Section 402, or Section 407 of this Act be committed, he agrees with another to the commission of that offense.  No person may be convicted of conspiracy to commit such an offense unless an act in furtherance of such agreement is alleged and proved to have been committed by him or by a co-conspirator.

(b) Co-conspirators.  It shall not be a defense to conspiracy that the person or persons with whom the accused is alleged to have conspired:

(1) Has not been prosecuted or convicted, or

(2) Has been convicted of a different offense, or

(3) Is not amenable to justice, or

(4) Has been acquitted, or

(5) Lacked the capacity to commit an offense.

(c) Sentence.  A person convicted of criminal drug conspiracy may be fined or imprisoned or both, but any term of imprisonment imposed shall be not less than the minimum nor more than the maximum provided for the offense which is the object of the conspiracy.

P.A. 77-757, § 405.1, added by P.A. 86-809, § 2, eff. Jan. 1, 1990.  Amended by P.A. 89-404, § 25, eff. Aug. 20, 1995; P.A. 90-593, § 25, eff. June 19, 1998.

Formerly Ill.Rev.Stat.1991, ch. 56½, ¶ 1405.1.

**Validity**

*Public Act 89-404, which amended this section, has been held unconstitutional in its entirety for violating the single-subject rule of the state Constitution by the Supreme Court of Illinois in the case of People v. Reedy, 1999, 186 Ill.2d 1, 237 Ill.Dec. 74, 708 N.E.2d 1114, rehearing denied.*

P.A. 90-593 reenacted the amendment by P.A. 89-404, which had been held by various Illinois appellate courts to be in violation of the single subject requirement of subsection (d) of Section 8 of Article IV of the Illinois Constitution.  See Validity italic above for Illinois Supreme Court determination.

### 570/405.2.  Streetgang criminal drug conspiracy

§ 405.2.  Streetgang criminal drug conspiracy.

(a) Any person who engages in a streetgang criminal drug conspiracy, as defined in this Section, is guilty of a Class X felony for which the offender shall be sentenced to a term of imprisonment as follows:

(1) not less than 15 years and not more than 60 years for a violation of subsection (a) of Section 401;

(2) not less than 10 years and not more than 30 years for a violation of subsection (c) of Section 401.

For the purposes of this Section, a person engages in a streetgang criminal drug conspiracy when:

(i) he or she violates any of the provisions of subsection (a) or (c) of Section 401; and

(ii) such violation is part of a conspiracy undertaken or carried out with 2 or more other persons; and

(iii) such conspiracy is in furtherance of the activities of an organized gang as defined in the Illinois Streetgang Terrorism Omnibus Prevention Act; [1] and

(iv) he or she occupies a position of organizer, a supervising person, or any other position of management with those persons identified in clause (ii) of this subsection (a).

The fine for a violation of this Section shall not be more than $500,000, and the offender shall be subject to the forfeitures prescribed in subsection (b).

(b) Subject to the provisions of Section 8 of the Drug Asset Forfeiture Procedure Act, [2] any person who is convicted under this Section of engaging in a streetgang criminal drug conspiracy shall forfeit to the State of Illinois:

(1) the receipts obtained by him or her in such conspiracy; and

(2) any of his or her interests in, claims against, receipts from, or property or rights of any kind affording a source of influence over, such conspiracy.

(c) The circuit court may enter such injunctions, restraining orders, directions or prohibitions, or may take such other actions, including the acceptance of satisfactory performance bonds, in connection with any property, claim, receipt, right or other interest subject to forfeiture under this Section, as it deems proper.

P.A. 77-757, § 405.2, added by P.A. 89-498, Art. 5, § 5-115, eff. June 27, 1996.

[1] 740 ILCS 147/1 et seq.
[2] 725 ILCS 150/8.

### 570/406.  Miscellaneous violations; penalties

§ 406.  (a) It is unlawful for any person:

(1) who is subject to Article III knowingly to distribute or dispense a controlled substance in violation of Sections 308 through 314 of this Act; or

(2) who is a registrant, to manufacture a controlled substance not authorized by his registration, or to distribute or dispense a controlled substance not authorized by his registration to another registrant or other authorized person; or

(3) to refuse or fail to make, keep or furnish any record, notification, order form, statement, invoice or information required under this Act; or

(4) to refuse an entry into any premises for any inspection authorized by this Act; or

(5) knowingly to keep or maintain any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place, which is resorted to by a person unlawfully possessing controlled substances, or which is used for possessing, manufacturing, dispensing or distributing controlled substances in violation of this Act.

Any person who violates this subsection (a) is guilty of a Class A misdemeanor for the first offense and a Class 4 felony for each subsequent offense.  The fine for each subsequent offense shall not be more than $100,000.  In addition, any practitioner who is found guilty of violating this subsection (a) is subject to suspension and revocation of his professional license, in accordance with such procedures as are provided by law for the taking of disciplinary action with regard to the license of said practitioner's profession.

(b) It is unlawful for any person knowingly:

c 2 4

# CRIMINAL OFFENSES

for activities for senior citizens: nursing homes, assisted-living centers, senior citizen housing complexes, or senior centers oriented toward daytime activities, or within 1,000 feet of the real property comprising any of the following places, buildings, or structures used primarily for housing or providing space for activities for senior citizens: nursing homes, assisted-living centers, senior citizen housing complexes, or senior centers oriented toward daytime activities is guilty of a Class 2 felony, the fine for which shall not exceed $125,000;

(6) subsection (h) of Section 401 in any school, or any conveyance owned, leased or contracted by a school to transport students to or from school or a school related activity, or residential property owned, operated or managed by a public housing agency or leased by a public housing agency as part of a scattered site or mixed-income development, or public park, on the real property comprising any school or residential property owned, operated or managed by a public housing agency or leased by a public housing agency as part of a scattered site or mixed-income development, or public park or within 1,000 feet of the real property comprising any school or residential property owned or managed by a public housing agency or leased by a public housing agency as part of a scattered site or mixed-income development, or public park, on the real property comprising any church, synagogue, or other building, structure, or place used primarily for religious worship, or within 1,000 feet of the real property comprising any church, synagogue, or other building, structure, or place used primarily for religious worship, on the real property comprising any of the following places, buildings, or structures used primarily for housing or providing space for activities for senior citizens: nursing homes, assisted-living centers, senior citizen housing complexes, or senior centers oriented toward daytime activities, or within 1,000 feet of the real property comprising any of the following places, buildings, or structures used primarily for housing or providing space for activities for senior citizens: nursing homes, assisted-living centers, senior citizen housing complexes, or senior centers oriented toward daytime activities is guilty of a Class 2 felony, the fine for which shall not exceed $100,000.

(c) Regarding penalties prescribed in subsection (b) for violations committed in a school or on or within 1,000 feet of school property, the time of day, time of year and whether classes were currently in session at the time of the offense is irrelevant.

P.A. 77-757, § 407; eff. Aug. 16, 1971. Amended by P.A. 77-2723, § 1, eff. Jan. 1, 1973; P.A. 78-255, § 61, eff. Oct. 1, 1973; P.A. 82-968, § 1, eff. Sept. 7, 1982; P.A. 84-1075, § 2, eff. Dec. 2, 1985; P.A. 85-616, § 1, eff. Jan. 1, 1988; P.A. 86-946, § 3, eff. Jan. 1, 1990; P.A. 87-524, § 3, eff. Jan. 1, 1992; P.A. 87-754, § 2, eff. Sept. 29, 1991; P.A. 87-895, Art. 2, § 2-29, eff. Aug. 14, 1992; P.A. 87-1225, § 1, eff. Dec. 22, 1992; P.A. 89-451, § 5, eff. Jan. 1, 1997; P.A. 90-164, § 5, eff. Jan. 1, 1998; P.A. 91-353, § 5, eff. Jan. 1, 2000; P.A. 91-673, § 15, eff. Dec. 22, 1999.

Formerly Ill.Rev.Stat.1991, ch. 56½, ¶ 1407.

¹ 625 ILCS 5/18b-101.

P.A. 91-353 deleted "on any public way" or "on a public way" preceding "within 1,000 feet" throughout.

P.A. 91-673, in subsec. (b), inserted references to "or leased by a public housing agency as part of a scattered site or mixed-income development" throughout, and substituted "operated or managed" for "operated and managed" throughout.

See 5 ILCS 70/6 as to the effect of (1) more than one amendment of a section at the same session of the General Assembly or (2) two or more acts relating to the same subject matter enacted by the same General Assembly.

## 570/407.1.   Persons 18 or older using, engaging or employing persons under 18 to deliver controlled, counterfeit or look-alike substances

§ 407.1.  Any person 18 years of age or over who violates any subsection of Section 401, Section 404 or Section 405 by using, engaging or employing a person under 18 years of age to deliver a controlled, counterfeit or look-alike substance may be sentenced to imprisonment for a term up to three times the maximum amount authorized by the pertinent subsection of Section 401, Section 404 or Section 405.

P.A. 77-757, § 407.1, added by P.A. 84-1475, § 4, eff. Feb. 5, 1987. Amended by P.A. 91-297, § 5, eff. Jan. 1, 2000.

Formerly Ill.Rev.Stat.1991, ch. 56½, ¶ 1407.1.

## 570/407.2.   Delivery of a controlled substance to a pregnant woman

§ 407.2.  Delivery of a controlled substance to a pregnant woman.  (a) Any person who violates subsection (a) of Section 401 of this Act by delivering a controlled substance to a woman he knows to be pregnant may be sentenced to imprisonment for a term twice the maximum amount authorized by Section 401 of this Act.

(b) Any person who delivers an amount of a controlled substance set forth in subsections (c) and (d) of Section 401 of this Act to a woman he knows to be pregnant commits a Class 1 felony.  The fine for a violation of this subsection (b) shall not be more than $250,000.

P.A. 77-757, § 407.2. added by P.A. 86-1459, § 13, eff. Jan. 1, 1991.  Amended by P.A. 87-754, § 2, eff. Sept. 29, 1991.

Formerly Ill.Rev.Stat.1991, ch. 56½, ¶ 1407.2.

## 570/408.   Second or subsequent offenses— Enhancement of penalties

§ 408.  (a) Any person convicted of a second or subsequent offense under this Act may be sentenced to imprisonment for a term up to twice the maximum term otherwise authorized, fined an amount up to twice that otherwise authorized, or both.

(b) For purposes of this Section, an offense is considered a second or subsequent offense, if, prior to his conviction of the offense, the offender has at any time been convicted under this Act or under any law of the United States or of any State relating to controlled substances.

P.A. 77-757, § 408, eff. Aug. 16, 1971.  Amended by P.A. 77-2723, § 1, eff. Jan. 1, 1973; P.A. 78-255, § 61, eff. Oct. 1, 1973.

Formerly Ill.Rev.Stat.1991, ch. 56½, ¶ 1408.

## 570/409.   Federal or state conviction or acquittal as bar to prosecution—Exceptions

§ 409.  Except for convictions or acquittals which are the basis for a charge of narcotics racketeering under Section 4 of the Narcotics Profit Forfeiture Act,¹ a conviction or acquittal, under the laws of the United States or of any State relating to controlled substances, for the same act is a bar to prosecution in this State.

P.A. 77-757, § 409, eff. Aug. 16, 1971.  Amended by P.A. 87-466, § 13, eff. Jan. 1, 1992.

Formerly Ill.Rev.Stat.1991, ch. 56½, ¶ 1409.

¹ 725 ILCS 175/4.

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
MACON COUNTY, ILLINOIS

FILED

JUN 2 2 2004

KATHY A. MATT
CIRCUIT CLERK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1999-CF-1532 |
| | ) |
| MELVIN FARLOW, | ) |
| | ) |
| Defendant. | ) |

## JUDGMENT

This cause called for hearing on a pro-se Post Conviction petition filed by the Defendant the

Court makes the following finding and orders in the first step of a possible three step proceeding:

1.      Petitioner was convicted of on count of unlawful criminal drug conspiracy with a

prior possession for sale conviction pursuant to 720 ILCS 570/405.1 in December of 2000 before

this trial judge and was sentenced to an extended term of seventy-five (75) years in the Illinois

Department of Corrections under indictment number 1999-CF-1532.

2.      Petitioner is presently incarcerated at Stateville Correctional Center, Joliet Illinois

under commitment number K-92694.

3.      Petitioner appealed his conviction to the Appellate Court of Illinois and that court

affirmed his conviction on July 15, 2003 appellate number 4-01-0427.

4.      Petitioner appealed to the Supreme Court of Illinois for leave to appeal and was

denied on December 3, 2003. Supreme Court number 96830.

5.      That Petitioner filed a post-conviction petition file marked June 9, 2004.

6.      That the Court has attached a copy of the petition and labeled it Exhibit I and it is

incorporated into this order.

7.      That the Court has attached a copy of the Appellate Court's decision and labeled it

Exhibit II and it is incorporated into this order.

8.    That the Court has attached a copy of the docket sheet of 1997-CF-445, People v. George Allen, which the Petitioner also attached to his petition and labeled it Exhibit III and it is incorporated into this order and the Court has taken judicial notice of the file.

9.    That the Court has taken judicial notice of 1999-CF-1771 People v. George Allen and attached a copy of the docket sheet which the petitioner did not attach to his petition and labeled it Exhibit IV and it is incorporated into this order.

10.    That the Court has attached a copy of the docket sheet of 1999-CF-1532 People v. Melvin Farlow and labeled it Exhibit V and it is incorporated into this order.

11.    That 1997-CF-445, 1999-CF-1771, and 1999-CF-1532 are all Macon County cases.

12.    That the Court believes the Defendant has raised six issues in his petition and the Court will attempt to address each of them.

13.    That the Petitioner alleges that evidence at trial was lost in bad faith after defense counsel requested said evidence. That the petitioner does not allege what evidence was lost and does not attach any affidavits alleging what the evidence was that was supposedly lost. This judge was the trial judge and this Court has examined the docket entries in Exhibit V including the entries before the Court received the file on the date of trial and there are no motions, findings, or orders which would substantiate the Defendant's allegations.

14.    That the Petitioner alleges that his trial counsel provided ineffective assistance when he failed to include in the post-trial motion the supposed prejudicial closing argument of the prosecutor. Although it is true that nothing was said in the post-trial motion about the prosecutor's closing argument, the Appellate Court chose to address the issue anyway and rejected it. Thus, the issue has already been ruled on by the Appellate Court and the doctrine of res adjudicata applies.

15.    That the Petitioner alleges that defense counsel objected to the People's instruction 16A, which was a Non-IPI instruction based on 720 ILCS 570 405/1(b), but failed to put his objection in his post-trial motion. That again, although it is true that nothing was said in the post-trial motion, the Appellate Court again chose to address the issue anyway and rejected it. Thus, the issue has already been ruled on by the Appellate Court and the doctrine of res adjudicata applies.

16.    That the Petitioner alleges the Court gave him an illegal sentence of seventy-five (75) years. The sentencing issue was raised in the appeal and was addressed by the Appellate Court and the Court found it was in the perimeters of the possible sentence of twelve (12) to fifty (50) years; however, because of his prior conviction he was eligible for a maximum sentence of 100 years. Again the doctrine of res adjudicata applies.

17.    That the Petitioner alleges that his attorney, Asher Geisler, his counsel of choice, had a per se conflict of interest because Mr. Geisler had represented one of the co-conspirators in a prior proceeding in Macon County Case No. 1997-CF-445. The co-conspirator, George Allen was charged in a separate file in Macon County Case No. 1999-CF-1771 with similar offenses to Melvin Farlow's offenses. As indicated in the appellate court opinion, George Allen was arrested prior to the Petitioner being arrested, but he agreed to cooperate with the police. Mr. Allen did not plead guilty until February 13, 2002 to one count of unlawful possession of controlled substance with the intent to deliver, all other charges were dismissed and Mr. Allen received probation. Mr. Allen was represented by the Public Defender's Office. That the Court has taken judicial notice of Macon County Case Nos. 1997-CF-445 and 1999-CF-1771.

18.    That the fact that Mr. Geisler was not representing both defendants contemporaneously prevents there from being a conflict of interest per se. The Defendant has not shown any actual prejudice. People v. Daly 341 Ill. App. 3d 372 (Fourth District) 2003 People v.

Morales 204 Ill. 2d 340 (2004)

19.    That the Petitioner alleges that Mr. Geisler told him he did not have a right to cross examine the co-conspirator, George Allen. That as the appellate court opinion describes, a tape of several phone conversations between Mr. Allen and Mr. Farlow was played for the jury. The purpose of the tape was to establish the home phone number of the Petitioner and the identity of the Petitioner's voice. First, it is in the discretion of trial counsel whether to call a witness. Second, since Mr. Allen was under indictment at the time of Mr. Farlow's trial he had a right to self-incrimination not to testify. It is difficult to see how Mr. Allen's testimony would have helped Mr. Farlow. A copy of the transcribed tapes is attached to this order and is incorporated into this order and labeled Exhibit VI.

20.    That the testimony of the Petitioner from the witness stand was more than adequate to convict him by his admissions as described in the Appellate court opinion.

21.    That the Court finds the petition is frivolous and patently without merit.

WHEREFORE, the Petition is DISMISSED. That the Petition is advised of his rights under Supreme Court Rule 651.

ENTERED:    _June 22, 2004_

_Scott B. Diamond_
ASSOCIATE JUDGE

C31

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
MACON COUNTY, ILLINOIS

**FILED**

THE PEOPLE OF THE STATE OF ILLINOIS, )
                                     )
        Plaintiff,                   )
                                     )
    vs.                              )    Case No.   1999-CF-1532
                                     )
MELVIN FARLOW,                       )
                                     )
        Defendant.                   )

**JUN 2 2 2004**

**KATHY A. HOTT**
**CIRCUIT CLERK**

## NOTICE PURSUANT TO SUPREME COURT RULE 651

You are hereby notified that on June 22, 2004 the Court entered an order, a copy of which is enclosed herewith. You have a right to appeal. In the case of an appeal from a post-conviction proceeding involving a judgment imposing a sentence of death, the appeal is to the Illinois Supreme Court. In all other cases, the appeal is to the Illinois Appellate Court in the district in which the circuit court is located. If you are indigent, you have a right to a transcript of the record of the post-conviction proceedings and to the appointment of counsel on appeal, both without costs to you. To preserve your right to appeal you must file a notice of appeal in the trial court within 30 days from the date the order was entered.

ENTERED:  *June 22, 2004*

_Scott B. Diamond_
ASSOCIATE JUDGE

C32

**E-FILED**
Thursday, 17 April, 2008  01:30:25 PM
Clerk, U.S. District Court, ILCD

NO. 4-04-0673

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT



| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| MELVIN FARLOW, | ) | No. 99CF1532 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott B. Diamond, |
| | ) | Judge Presiding. |

## ORDER

In December 2000, a jury convicted defendant, Melvin Farlow, of criminal drug conspiracy (720 ILCS 570/405.1 (West 1998)), and the trial court later sentenced him to 75 years in prison.  Defendant appealed, and this court affirmed his conviction and sentence.  <u>People v. Farlow</u>, No. 4-01-0427 (July 15, 2003) (unpublished order under Supreme Court Rule 23).

In June 2004, defendant <u>pro</u> <u>se</u> filed a petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 through 122-8 (West 2004)), alleging several constitutional violations.  Later that month, the trial court dismissed defendant's petition as frivolous and patently without merit (725 ILCS 5/122-2.1(a)(2) (West 2004)).  In July 2004, defendant <u>pro</u> <u>se</u> filed a supplemental postconviction petition.  On July 12, 2004, defendant filed a notice of appeal from the court's dismissal of his initial postconviction petition.  Two days later, the court entered an order dismissing defendant's supplemental petition.  Defendant did not file a notice of appeal from that order.

EXHIBIT C

Defendant appeals, arguing that the trial court erred by dismissing his initial and supplemental postconviction petitions. We lack jurisdiction to consider defendant's allegations regarding the court's dismissal of his supplemental petition, and we disagree with defendant's argument that the court erred by dismissing his initial petition. We thus affirm.

## I. BACKGROUND

Following defendant's December 2000 conviction, defendant appealed, arguing that (1) his criminal-drug-conspiracy conviction was void because it violated Wharton's Rule; (2) his criminal-drug-conspiracy conviction was legally and factually inconsistent with the jury's inability to reach a verdict on charges of drug trafficking and delivery (720 ILCS 570/401.1, 401(a)(2)(C) (West 1998)); (3) the trial court improperly admitted other-crimes evidence; (4) the State failed to prove him guilty beyond a reasonable doubt of criminal drug conspiracy; (5) he was deprived of a fair trial when the prosecutor made improper remarks during closing argument; (6) the court abused its discretion by providing a nonpattern jury instruction; and (7) his sentence was excessive and constituted cruel and unusual punishment. This court disagreed with all of defendant's arguments and affirmed his conviction and sentence. Farlow, No. 4-01-0427 (July 15, 2003) (unpublished order under Supreme Court Rule 23).

In June 2004, defendant pro se filed a postconviction petition (725 ILCS 5/122-1 through 122-8 (West 2004)), alleging that (1) he received ineffective assistance of trial counsel when

- 2 -

counsel failed to object to (a) the prosecutor's improper remarks during closing argument and (b) the trial court's providing a nonpattern jury instruction; (2) his 75-year sentence constituted an impermissible double enhancement; (3) the State "lost" certain evidence in bad faith; and (4) his trial counsel operated under a conflict of interest by virtue of counsel's past representation of a State's witness (one of defendant's coconspirators).  Later in June 2004, the trial court dismissed defendant's petition as frivolous and patently without merit (725 ILCS 5/122-2.1(a)(2) (West 2004)).

In July 2004, defendant <u>pro se</u> filed a supplemental postconviction petition, alleging several additional constitutional violations.  On July 12, 2004, defendant filed a notice of appeal from the trial court's dismissal of his initial postconviction petition.  On July 14, 2004, the court entered an order dismissing defendant's supplemental petition.  Defendant did not file a notice of appeal from that order.

## II. ANALYSIS

### A. Jurisdiction To Consider Defendant's Supplemental Postconviction Petition

Initially, we must address the State's argument that we lack jurisdiction to consider the trial court's order dismissing defendant's supplemental postconviction petition.

Appeals from postconviction proceedings are governed by the supreme court rules for criminal appeals.  134 Ill. 2d R. 651(b).  Thus, a defendant must comply with Supreme Court Rule 606(b) (188 Ill. 2d R. 606(b)) by filing his notice of appeal

- 3 -

within 30 days after the order disposing of the petition or
within 30 days after the entry of an order disposing of a timely
filed motion attacking the judgment.  An order dismissing a
postconviction petition is immediately appealable because it
disposes of the petition entirely.  People v. LaPointe, 365 Ill.
App. 3d 914, 919, 850 N.E.2d 893, 897 (2006).

        In this case, defendant did not file a notice of appeal
from the trial court's order dismissing his supplemental
postconviction petition.  Thus, this court lacks jurisdiction to
consider defendant's allegations regarding the trial court's
dismissal of his supplemental petition.

                B. The Trial Court's Dismissal of Defendant's
                    Initial Postconviction Petition

                    1. Proceedings Under the Act

        A defendant may proceed under the Act by alleging "that
in the proceedings which resulted in his or her conviction there
was a substantial denial of his or her rights under the Constitu-
tion of the United States or of the State of Illinois or both."
725 ILCS 5/122-1(a) (West 2004).  A petition filed under the Act
must "clearly set forth the respects in which petitioner's
constitutional rights were violated."  725 ILCS 5/122-2 (West
2004).  The petition shall have attached "affidavits, records[,]
or other evidence supporting its allegations or shall state why
the same are not attached."  725 ILCS 5/122-2 (West 2004).

        The Act establishes a three-stage process for adjudi-
cating a postconviction petition (725 ILCS 5/122-1 through 122-8
(West 2004); People v. Jones, 362 Ill. App. 3d 31, 33, 839 N.E.2d

                            - 4 -

539, 541 (2005)), and this case involves the trial court's dismissal of defendant's postconviction petition at the first stage. At this stage, the Act does not permit any further pleadings from the defendant or any motions or responsive pleadings from the State. People v. Jones, 211 Ill. 2d 140, 144, 809 N.E.2d 1233, 1236 (2004). Instead, the court determines whether the petition alleges a constitutional infirmity that would necessitate relief under the Act. Unless positively rebutted by the record, all well-pleaded allegations are taken as true at this stage. People v. Coleman, 183 Ill. 2d 366, 380-81, 701 N.E.2d 1063, 1071 (1998); People v. Little, 335 Ill. App. 3d 1046, 1050, 782 N.E.2d 957, 961 (2003).

Dismissal at the first stage of postconviction proceedings is warranted when the trial court independently reviews the postconviction petition and determines that "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2002); Coleman, 183 Ill. 2d at 379, 701 N.E.2d at 1071. A postconviction petition is considered frivolous or patently without merit only if the allegations in the petition fail to present the "'gist of a constitutional claim.'" The "gist" standard is "'a low threshold.'" To set forth the "gist" of a constitutional claim, the postconviction petition "'need only present a limited amount of detail'" and hence need not set forth the claim in its entirety. People v. Edwards, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001), quoting People v. Gaultney, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996).

- 5 -

In <u>People v. Rogers</u>, 197 Ill. 2d 216, 222, 756 N.E.2d 831, 834 (2001), the supreme court noted that it had "consistently upheld the dismissal of a post[]conviction petition when the record from the original trial proceedings contradicts the defendant's allegations."  See, for example, <u>People v. Jones</u>, 66 Ill. 2d 152, 157, 361 N.E.2d 1104, 1106 (1977) ("A court may also properly dismiss a post[]conviction petition if the record of proceedings at trial shows the petition to be nonmeritorious").

In addition, a petition brought under the Act is a collateral proceeding that permits inquiry only into constitutional issues that the defendant did not raise and could not have raised on direct appeal.  Thus, "issues that were raised and decided on direct appeal are barred from consideration by the doctrine of <u>res judicata</u>; issues that could have been raised, but were not, are considered [forfeited]." <u>People v. Williams</u>, 209 Ill. 2d 227, 233, 807 N.E.2d 448, 452 (2004).  The doctrines of <u>res judicata</u> and forfeiture will be relaxed only under the following circumstances:  (1) where fundamental fairness so requires, (2) where the forfeiture stems from ineffective assistance of appellate counsel, or (3) where the facts relating to the claim do not appear on the face of the original appellate record.  <u>People v. Palmer</u>, 352 Ill. App. 3d 877, 884, 817 N.E.2d 129, 136 (2004).

On appeal from a first-stage dismissal, this court reviews <u>de novo</u> the trial court's decision.  <u>Edwards</u>, 197 Ill. 2d at 247, 757 N.E.2d at 447.

- 6 -

2. <u>Defendant's</u> <u>Claims</u> <u>of</u> <u>Ineffective</u> <u>Assistance</u> <u>of</u> <u>Trial</u> <u>Counsel</u>

Defendant first argues that the trial court erred by summarily dismissing his claims that he received ineffective assistance of trial counsel when counsel failed to object to (1) the prosecutor's improper remarks during closing argument and (2) the court's providing a nonpattern jury instruction. We disagree.

In <u>People v. Evans</u>, 186 Ill. 2d 83, 103, 708 N.E.2d 1158, 1168 (1999), the supreme court held that a petitioner "cannot obtain relief under the Act by rephrasing issues, which were previously addressed, in constitutional terms, such as ineffective assistance of counsel." On direct appeal, this court rejected--on the merits--defendant's arguments that (1) he was deprived of a fair trial when the prosecutor made improper remarks during closing argument and (2) the trial court abused its discretion by providing a nonpattern jury instruction. In his postconviction petition, defendant simply rephrased those same issues by couching them in terms of ineffective-assistance-of-counsel claims. We thus conclude that defendant's ineffective-assistance claims are barred by the doctrine of <u>res</u> <u>judicata</u>. Accordingly, the trial court did not err by summarily dismissing those claims.

3. <u>Defendant's</u> <u>Claim</u> <u>That</u> <u>His</u> <u>75-Year</u> <u>Sentence</u>
<u>Constituted</u> <u>an</u> <u>Impermissible</u> <u>Double</u> <u>Enhancement</u>

Defendant next argues that the trial court erred by summarily dismissing his claim that his 75-year sentence (which was imposed pursuant to section 408 of the Criminal Code of 1961

- 7 -

(720 ILCS 570/408 (West 1998)), which allows for discretionary doubling of the maximum sentence based on a prior conviction) constituted an impermissible double enhancement. We disagree.

As earlier stated, issues that could have been raised on direct appeal, but were not, are considered forfeited. Williams, 209 Ill. 2d at 233; 807 N.E.2d at 452. The doctrine of forfeiture will be relaxed only where (1) fundamental fairness so requires, (2) the forfeiture stems from ineffective assistance of appellate counsel, or (3) the facts relating to the claim do not appear on the face of the original appellate record. Palmer, 352 Ill. App. 3d at 884, 817 N.E.2d at 136.

In this case, defendant could have raised his double-enhancement argument on direct appeal, and none of the circumstances that allow the doctrine of forfeiture to be relaxed exist. We thus conclude that defendant's double-enhancement claim is barred by the doctrine of forfeiture. Accordingly, the trial court did not err by summarily dismissing this claim.

4. Defendant's Claim That the State "Lost" Evidence in Bad Faith

Defendant next argues that the trial court erred by summarily dismissing his claim that the State "lost" certain unidentified evidence in bad faith. We disagree.

As earlier stated, to set forth the "gist" of a constitutional claim, a defendant's postconviction petition "'need only present a limited amount of detail'" and hence need not set forth the claim in its entirety. Edwards, 197 Ill. 2d at 244, 757 N.E.2d at 445 (2001), quoting Gaultney, 174 Ill. 2d at 418, 675

- 8 -

N.E.2d at 106.  Thus, a petition need not set forth all the details.  "By the same token, the petition must at least present some details (a 'limited amount')."  (Emphasis in original.) People v. Shevock, 353 Ill. App. 3d 361, 365, 818 N.E.2d 921, 925 (2004).

In this case, defendant's claim of lost evidence presented no details whatsoever.  Defendant alleged that the State lost evidence in bad faith, but he did not indicate what that evidence was or how the State acted in bad faith.  In addition, as the trial court noted, defendant failed to attach an affidavit supporting this claim and nothing in the record substantiated defendant's claim.  We thus conclude that the trial court did not err by summarily dismissing this claim.  See Shevock, 353 Ill. App. 3d at 365-66, 818 N.E.2d at 925-26 (in which this court affirmed the trial court's summary dismissal of one of the defendant's postconviction claims where it contained an "empty conclusion" and was "'completely lacking in substance'", quoting Edwards, 197 Ill. 2d at 257, 757 N.E.2d at 453).

### 5. Defendant's Claim That His Trial Counsel Operated Under a Conflict of Interest

Last, defendant argues that the trial court erred by summarily dismissing his claim that his trial counsel operated under a conflict of interest by virtue of counsel's past representation of a State's witness.  Specifically, he contends that he stated the gist of claim that his trial counsel was operating under a per se conflict of interest.  We disagree.

- 9 -

A criminal defendant's sixth-amendment right to effective assistance of counsel includes the right to conflict-free representation. <u>People v. Morales</u>, 209 Ill. 2d 340, 345, 808 N.E.2d 510, 513 (2004). If a <u>per</u> <u>se</u> conflict exists, no need exists to "show that the attorney's actual performance was in any way affected by the existence of the conflict." <u>People v. Spreitzer</u>, 123 Ill. 2d 1, 15, 525 N.E.2d 30, 35 (1988). A <u>per</u> <u>se</u> conflict exists when defense counsel (1) had a contemporaneous relationship with the victim, the prosecution, a prosecution witness, or an entity assisting the prosecution, or (2) was a former prosecutor who had been personally involved in the prosecution of the defendant. <u>Morales</u>, 209 Ill. 2d at 345-46, 808 N.E.2d at 513.

In this case, defense counsel previously represented George Allen, a coconspirator who had cooperated with the police in the investigation leading to defendant's arrest. Although Allen was a potential State's witness, he did not testify at defendant's trial. Because (1) defense counsel did not have a contemporaneous attorney-client relationship with Allen and (2) Allen was not a witness at defendant's trial, no <u>per</u> <u>se</u> conflict of interest existed. See <u>Morales</u>, 209 Ill. 2d at 346, 808 N.E.2d at 513 (concluding that no <u>per</u> <u>se</u> conflict existed where defense counsel simultaneously represented a potential State's witness, who never testified and whose out-of-court statements about the defendant were admitted in evidence at sentencing).

Defendant does not contend on appeal that he stated the

- 10 -

gist of a claim of an actual conflict of interest.  He has thus
forfeited this issue on appeal.  Even assuming that defendant had
not forfeited the issue, we nonetheless conclude that defendant
failed to state the gist of such a claim.

A defendant may establish a violation of his right to
effective assistance of counsel by showing an actual conflict of
interest that adversely affected his counsel's performance.
Morales, 209 Ill. 2d at 348-49, 808 N.E.2d at 514-15.  To do so,
he must show "some specific defect in his counsel's strategy,
tactics, or decision[-]making attributable to the conflict."
Spreitzer, 123 Ill. 2d at 18, 525 N.E.2d at 36.  "Speculative
allegations and conclusory statements are not sufficient to
establish that an actual conflict of interest affected counsel's
performance."  Morales, 209 Ill. 2d at 349, 808 N.E.2d at 515.

Defendant's postconviction petition contained only a
conclusory and speculative allegation regarding his counsel's
performance.  Specifically, defendant offered nothing beyond the
bare allegation that he wished to "confront his accuser," Allen,
but was prevented from doing so by defense counsel because of
counsel's alleged conflict of interest.  Defendant did not allege
what testimony Allen would have provided, nor did he attach an
affidavit from Allen setting forth his potential testimony.  Mere
speculation that Allen's testimony might have been somehow
helpful to defendant's case is not sufficient to establish that
defense counsel's performance was defective.  See Morales, 209
Ill. 2d at 350, 808 N.E.2d at 515 (rejecting a defendant's claim

- 11 -

that his trial counsel operated under an actual conflict of interest where the defendant asserted only that "counsel's cross-examination [of a witness] was adversely affected in some unspecified way"); see also <u>Palmer</u>, 352 Ill. App. 3d at 885, 817 N.E.2d at 137 (in the absence of an affidavit from the proposed witness, a reviewing court cannot determine whether the proposed witness could have provided testimony or information favorable to the defendant).

Accordingly, we conclude that the trial court did not err by summarily dismissing defendant's conflict-of-interest claim.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN, J., with KNECHT and COOK, JJ., concurring.

**E-FILED**
Thursday, 17 April, 2008  01:30:37 PM
Clerk, U.S. District Court, ILCD

103716

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

January 24, 2007

Hon. Lisa Madigan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No. 103716 - People State of Illinois, respondent, v. Melvin
            Farlow, petitioner.  Leave to appeal, Appellate
            Court, Fourth District.

The Supreme Court today DENIED the petition for leave to appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court on March 1, 2007.

EXHIBIT D